**Richard H. WEBSTER, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–268.**

United States Court of Veterans Appeals.

Submitted Dec. 3, 1990.

Decided Feb. 28, 1991.

As Amended March 1, 1991.

Richard H. Webster, pro se.

Raoul Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and R. Randall Campbell, Washington, D.C., were on the brief, for appellee.

Before KRAMER, MANKIN and HOLDAWAY, Associate Judges.

KRAMER, Associate Judge:

In its decision of February 22, 1990, the Board of Veterans' Appeals (BVA) denied appellant's reopened claim for an increased rating for his 30–percent service-connected post traumatic stress disorder (PTSD). Without providing reasons or bases for its action, supported by a thorough analysis of how the rating schedule for PTSD applies to the relevant evidence in the record, the BVA simply concluded that the criteria for a rating of more than 30 percent were not met. The BVA also failed to evaluate which part of the appellant's disability is service connected and which is not. We reverse and remand the case to the BVA for proceedings consistent with this opinion.

I.

The appellant served on active duty with the United States Navy from November 1942 to March 1946. R. at 1. He contends, and the appellee does not dispute, that during this period, he underwent several stressful combat experiences as a result of which, on May 25, 1984, the Veterans' Administration (now the Department of Veterans Affairs) (VA) awarded him a 30–percent service-connected disability for PTSD. R. at 45, 48, 78, 79, 83. (It is unclear from the record when appellant first applied for such benefits.) From April 1, 1985, to April 17, 1985, appellant was hospitalized by the VA for mental illness and was diagnosed as having, in addition to PTSD, bipolar disorder, depression, and parkinsonism. R. at 11.

Following this hospitalization, in July 1985 appellant's mental condition forced him to retire on disability from his job as a national representative for the American Federation of Government Employees (AFGE). R. at 10, 30, 105.

In 1986, Dr. Hal J. Breen, a private psychiatrist who had been treating appellant since 1982, diagnosed him as permanently disabled because of mental disorders including PTSD. R. at 20.

On January 27, 1987, a VA physician, Dr. Luis Collo, confirmed appellant's previous diagnosis for PTSD, bipolar disorder, and depression. R. at 6. In his report, he classified appellant by degree of impairment using the following definitions:

Mild: suspected impairment of slight importance which does not affect ability to function.

Moderate: an impairment which affects but does not preclude ability to function.

Moderately Severe: an impairment which seriously affects ability to function.

Severe: extreme impairment of ability to function.

R. at 5.

Based on these definitions, Dr. Collo rated appellant's impairment as follows: mild impairment in personal habits; moderate impairment to respond appropriately to supervision, perform simple tasks, and maintain personal hygiene and outside interests; moderately severe impairment to relate to other people, socialize with friends and neighbors, attend meetings, work around the house, understand, carry out, and remember instructions, respond appropriately to co-workers and customary work pressures, and perform repetitive and varied tasks; and severe impairment to perform complex tasks in a routine work setting. Finally, Dr. Collo concluded that, based on the above, appellant was unable to sustain scheduled activity, such as conventional employment, on either a daily or weekly basis. R. at 4–6.

On June 22, 1987, a federal Administrative Law Judge (A.L.J.), subsequent to a hearing, found appellant unable to engage in any gainful activity because of his mental impairment and therefore entitled to disability insurance benefits under the Social Security Act. 42 U.S.C. § 416, 423 (1988 & Supp. I 1989). R. at 8–11. The A.L.J. determined that appellant suffered from a severe anxiety-related disorder manifested by persistent recollections of past traumatic experiences, marked limited ability to concentrate, demonstrated social isolation, and inability to begin and complete a task in a work-like setting. These findings were based on appellant's own testimony at the hearing, statements from his co-workers, and the above-described evaluations of Dr. Breen and Dr. Collo. R. at 10–14.

As a consequence of appellant's reopening his VA claim for an increased rating for his PTSD, a Regional Office (RO) hearing was held on February 4, 1988. R. at 21–42. During this proceeding, appellant testified under oath that he rarely associated with anyone outside of his immediate family. R. at 23. Bert Reynolds, a national representative for AFGE and appellant's past co-worker, recounted under oath that appellant, prior to his forced retirement, frequently failed to report for work, was confused and unable to complete tasks when he did show up, and became aggressively accusatory of others when his performance was criticized. R. at 29–31. In addition, Mr. Reynolds testified that appellant, once a gregarious man, had become a social recluse. R. at 31. Lastly, Dr. Breen offered his sworn expert opinion that appellant suffered from a psycho-neurotic disorder which bordered on the psychotic and, as a result, was unable to function in either a social or work setting. R. at 34–39.

On March 9, 1988, Dr. James McLoone, another VA physician, examined appellant pursuant to his application for an increased disability claim and diagnosed him as having chronic PTSD occasioned by World War II experiences, a passive-aggressive personality disorder, and a mood disorder. R. at 47–48. In making an apparent attempt to isolate the disorders which were relevant to appellant's impairment, he remarked: "There was no information obtained during this rating examination that would dismiss any of these diagnostic impressions. They all seem to be relevant." R. at 47.

On October 24, 1988, the VA denied appellant's claim for increased service-connected disability. R. at 84–85.

Appellant filed a Notice of Disagreement on April 10, 1989. Another RO hearing was held on June 7, 1989, at which only appellant testified. R. at 99–104. In a letter dated July 25, 1989, the RO again denied the requested increased rating stating, that, "... if the symptomatology assignable to your non[-]service-connected bipolar disorder is not considered, the current 30–percent evaluation for your service-connected PTSD is appropriate." R. at 107.

Appellant appealed this decision to the BVA which denied his claim on February 22, 1990, and concluded:

> For entitlement to a 50 percent rating for the veteran's post-traumatic stress disorder, it must be demonstrated that the disability is productive of considerable

social and industrial impairment. After a review of all the evidence of record, the Board cannot reach such a conclusion.

When the veteran was recently examined for compensation purposes, mood was sad and frustrated but judgment was adequate. Therefore, while the Board does not wish to minimize the difficulties the veteran has encountered as a result of the post-traumatic stress disorder, it is concluded that this disability is productive of no more than definite social and industrial inadaptability.

*Richard H. Webster,* loc. no. 003375, at 4 (BVA Feb. 22, 1990). Appellant subsequently perfected an appeal to this Court on April 9, 1990.

## II.

■ Pursuant to 38 U.S.C. § 4061(a)(3) (1988), this Court is to

hold unlawful and set aside decisions, findings ... conclusions ... issued by the ... Board of Veterans Appeals ... found to be ... in violation of a statutory right ... or without observance of procedure required by law....

Thus, when the BVA fails to comply with 38 U.S.C. § 4004(d)(1) (1988) by not providing "reasons or bases for [its] findings and conclusions, on all material issues of fact and law presented on the record", it is acting both in violation of a statutory right and without procedure required by law, and, consequently, a reversal of its decision is required. The Court first addressed § 4004(d)(1) in *Gilbert v. Derwinski,* 1 Vet. App. 49 (1990), where it determined that

... the Board must identify those findings it deems crucial to its decision and account for the evidence which it finds to be persuasive or unpersuasive. These decisions must contain clear analysis and succinct but complete explanations. . A bare conclusory statement, without both supporting analysis and explanation, is neither helpful to the veteran, nor 'clear enough to permit effective judicial review', nor in compliance with statutory requirements.

*Gilbert,* at 57 (quoting *International Longshoremen's Assoc. v. National Mediation Board,* 870 F.2d 733, 735 (D.C.Cir. 1989)). *See also Sammarco v. Derwinski,* 1 Vet.App. 111, 112 (1991) (reasons or bases are required for each of the BVA's findings and conclusions on all material issues of fact and law on the record); *Payne v. Derwinski,* 1 Vet.App. 85, 87 (1990) (the BVA must apply a regulation which bears a reasonable relationship to a claimant's well-grounded claim or give reasons/bases explaining its failure to do so); *Murphy v. Derwinski,* 1 Vet.App. 78, 81–82 (1990) (when the BVA relies on a medical conclusion in arriving at a decision, it must have reasons or bases supporting such an opinion, even if given by a medical member of the BVA).

PTSD is to be rated under 38 C.F.R. § 4.132, Diagnostic Code 9411 (1990) (DC 9411) which provides for the following categories of disability:

100 percent:

The attitudes of all contacts except the most intimate are so adversely affected as to result in virtual isolation in the community. Totally incapacitating psycho-neurotic, symptoms bordering on gross repudiation of reality with disturbed thought or behavioral processes associated with almost all daily activities such as fantasy, confusion, panic and explosions of aggressive energy resulting in profound retreat from mature behavior. Demonstrably unable to obtain or retain employment.

70 percent:

Ability to establish and maintain effective of favorable relationships with people is severely impaired. The psychoneurotic symptoms are of such severity and persistence that there is severe impairment in the ability to obtain or retain employment.

50 percent:

Ability to establish and maintain effective or favorable relationships with peo-

ple is considerably impaired. By reason of psychoneurotic symptoms the reliability, flexibility and efficiency levels are so reduced as to result in considerable industrial impairment.

30 percent:

Definite impairment in the ability to establish or maintain effective and wholesome relationships with people. The psychoneurotic symptoms result in such reduction in initiative, flexibility, efficiency and reliability levels as to produce definite industrial impairment.

38 C.F.R. § 4.132, DC 9411 (1990). The thrust of DC 9411 is to determine disability based upon the actual industrial impairment of the particular individual being rated. (*But see* 38 C.F.R. § 4.130 (1990) which, although not cited by the BVA as being relevant here, seems to introduce a more objective "average person" test of industrial impairment.) Although the concept of social impairment is also employed in DC 9411, it is used only to assist in the evaluation of industrial impairment. Note 1 to DC 9411 states that "social impairment per se will not be used as the sole basis for any specific percentage evaluation...." 38 C.F.R. § 4.132, DC 9411, Note (1). Furthermore, 38 C.F.R. § 4.129 (1990) states:

Social integration is one of the best evidences of mental health and reflects the ability to establish (together with a desire to establish) healthy and effective interpersonal relationships. Poor contact with other human beings may be an index of emotional illness. However, in evaluating impairment resulting from the ratable psychiatric disorders, social inadaptability is to be evaluated only as it affects industrial adaptability. The principle of social and industrial inadaptability as the basic criterion for rating disability from the mental disorders contemplates those abnormalities of conduct, judgment, and emotional reactions which affect economic adjustment, i.e., which produce impairment of earning capacity.

■ In the instant case, the BVA affirmed the 30–percent rating specified in DC 9411 for "definite industrial impair-

ment", as determined by the RO. *Richard H. Webster*, loc. no. 003375, at 4 (BVA Feb. 22, 1990). However, in so doing, it failed to give any reasons or bases explaining why it ostensibly rejected, or ignored, the findings and testimony of Dr. Green, the findings of Dr. Collo and the A.L.J., and the testimony of Mr. Reynolds, all of which seemed to indicate that the appellant's impairment was greater than that reflected in his rating of 30 percent for "definite impairment". Because we are a Court of review, it is not appropriate for us to make a de novo finding, based on the evidence, of the appellant's degree of impairment. Nonetheless, it is this Court's obligation to require the BVA to provide its reasons or bases for any material, factual or legal determination, especially for one that appears on its face to be inconsistent with much of the relevant evidence in the record. *Cf. Ohland v. Derwinski*, 1 Vet. App. 147, 150 (1991) (a BVA decision is deficient where it fails to explain the criteria used in making its determination into which PTSD rating category the examining physician's report fits).

■ It is possible that perhaps the BVA decision rests upon the July 25, 1989, conclusion of the RO which appears to make a bifurcation between the appellant's service-connected mental condition and his non-service-connected mental condition. In its letter to appellant denying an increase, the RO stated that: "... if the symptomatology assignable to your non[-]service-connected bipolar disorder is not considered, the current 30–percent evaluation for your service-connected PTSD is appropriate." R. at 107. The BVA decision is totally silent, however, on the question of attributing part of appellant's impairment to a non-service-connected condition. If indeed upon remand the BVA makes such a determination, it must do so based upon medical evidence. *See Murphy*, at 81.

■ Lastly, the BVA must consider the benefit-of-the-doubt doctrine in accordance with the established principles which this Court has enunciated. Simply stated, the one sentence, rote recitation of the benefit-

of-the-doubt denial liturgy will not suffice. *See, e.g., Gilbert,* at 57–61; *Sammarco,* at 113.

### III.

For the reasons stated above, the decision of the BVA is reversed and remanded for proceedings consistent with this opinion.

*It is so Ordered.*