Carl Berlin **FLETCHER**, Appellant,

v.

Edward J. **DERWINSKI**, Secretary of Veterans Affairs, Appellee.

No. 90–25.

United States Court of Veterans Appeals.

Submitted Feb. 22, 1991.

Decided July 16, 1991.

As Amended July 24, 1991.

Robert L. Nelson and Lawrence B. Hagel, Washington, D.C., were on the brief, for appellant.

Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Carolyn F. Washington, Washington, D.C., were on the brief, for appellee.

Before NEBEKER, Chief Judge, and MANKIN and HOLDAWAY, Associate Judges.

HOLDAWAY, Associate Judge:

This case concerns an appeal of a Board of Veterans' Appeals (BVA or Board) decision that the veteran's industrial impairment was only "considerable" and, hence, he was not entitled to more than a 50–percent rating for his service-connected post-traumatic stress disorder (PTSD). We remand to the BVA because the BVA decision of August 17, 1989, fails to comply with the "reasons or bases" requirement of 38 U.S.C. § 7104(d)(1) (formerly § 4004). *See Gilbert v. Derwinski*, 1 Vet.App. 49, 56 (1990); *Webster v. Derwinski*, 1 Vet.App. 155, 158 (1991).

Appellant was on active duty between 1948 and 1951. During this period, he served in Korea where he was involved in several stressful combat experiences. After leaving the service, appellant suffered "nervous spells" which intensified, eventually resulting in numerous periods of hospitalization and outpatient therapy between 1959 and 1973. Appellant's diagnosis during this time was "passive dependent personality" disorder.

In 1980, the Veteran's Administration (now Department of Veterans Affairs) (VA) changed its regulations to incorporate PTSD for the first time. In 1982, appellant was again hospitalized in a VA hospital. The diagnosis of appellant's illness this time was PTSD. Appellant was initially granted a 30–percent rating for service-connected PTSD which, after appeal, was raised to 50–percent by the BVA in a decision dated March 30, 1987. Included in the evidence considered in making this decision was a memorandum from the Director, VA Mental Health and Behavioral Sciences Service stating that PTSD was the correct diagnosis and that "[appellant did] not otherwise have a psychiatric disorder which had its onset during active service." The March 30, 1987, BVA decision described appellant's PTSD as "principally manifested by instrusive recollections of wartime experiences and social isolation; the disorder is productive of substantial social impairment and severe industrial impairment."

In May 1988, the VA Regional Office (RO) issued a confirmed rating decision in which appellant's condition was described as "consistent with assigned eval[uation] reflecting severe impairment." In August 1988, appellant was again hospitalized and filed a claim for an increased rating. A VA psychiatric examination of appellant was done in November 1988. The examining physician questioned the diagnosis of PTSD, stating that he believed the diagnosis should be dependent personality disorder. However, the doctor also concluded that appellant's "vocational impairment [was] severe, social impairment [was] severe."

In January 1989, the RO denied appellant's claim for an increased rating. After that decision was issued, Dr. Chamberlain (then acting Chief of the Psychiatry Service at Ann Arbor VA Medical Center, who had been treating appellant since 1982), submitted a medical evaluation which stated: "[Appellant's] symptoms have severely affected his abilities to function in his family

or to pursue meaningful employment...."
The RO again denied an increased rating.
Appellant continued his appeal and on August 17, 1989, the BVA denied an increased rating for appellant's service-connected PTSD. A timely appeal was filed in this Court on January 9, 1990.

## ANALYSIS

The VA regulations which set forth the percentage of disability to be assigned when a particular degree of social and industrial impairment caused by service-connected PTSD was demonstrated are contained in 38 C.F.R. § 4.132, Diagnostic Code 9411 (1990). These regulations were revised in 1988. Prior to the revision, an individual whose industrial impairment had been rated "severe" by the RO or BVA received a 50–percent rating. After the change, a finding of "severe" industrial impairment meant a rating of 70–percent.

When a veteran is examined, the doctor submits a report which may characterize the doctor's opinion of the veteran's condition. However, "[t]he examiner's classification of the disease as 'mild,' 'moderate,' or 'severe' is not determinative of the degree of disability, but the report and the analysis of the symptomatology and the full consideration of the whole history by the rating agency will be." 38 C.F.R. § 4.130 (1990).

When a case is appealed to the BVA, the Board "may exercise the same authority as the department having original jurisdictional responsibility." 38 C.F.R. § 19.1(a) (1990). This means that the BVA undertakes a de novo determination. The BVA's decisions are based on "the entire record in the proceeding and upon consideration of all evidence and material of record and applicable provisions of law and regulation." 38 U.S.C. § 7104(a) (1991). *See also* 38 C.F.R. § 19.180 (1990). "Previously issued Board decisions will be considered binding only with regard to the specific case decided ... Each case presented to the Board will be decided on the basis of the individual facts of the case in light of applicable law and procedure." 38 C.F.R. § 19.-197 (1990).

## I.

The August 17, 1989, BVA decision in this case stated: "The current manifestations of the veteran's service-connected psychiatric disorder do not result in more than considerable social and industrial impairment." The Discussion and Evaluation portion addressed why appellant does not qualify for a 100–percent rating:

> [T]he current psychiatric findings do not describe the veteran as profoundly depressed. He is not shown to have affective mannerisms grossly out of the ordinary. Although anxiety is clearly present, it is not overwhelming. He is not suicidal or otherwise violent. Cognitive functioning, while not unaffected, is not manifestly deficient.... [T]he medical and other data which are before us for consideration do not reveal psychiatric abnormalities such that the veteran is utterly estranged from the real world about him.

*Id.* Nothing in the 1989 BVA decision addresses why the veteran does not qualify for the 70–percent rating.

■ This Court held in *Gilbert* that the BVA must "articulate with reasonable clarity its 'reasons or bases' for decisions, and in order to facilitate effective judicial review, the Board must identify those findings it deems crucial to its decision and account for the evidence which it finds to be persuasive or unpersuasive. These decisions must contain clear analysis and succinct but complete explanations." *Gilbert,* at 56. Failing to address the entitlement to a 70–percent rating alone would be sufficient to require a "reasons or bases" remand under *Gilbert.*

## II.

■ BVA panels must consider only medical evidence in the record to support their findings, and, if the panel finds that evidence to be of doubtful weight or credibility, the BVA panel must state its reasons for that finding and point to a medical basis other than the panel's own unsubstantiated opinion as the basis for the BVA

decision. *Colvin v. Derwinski*, 1 Vet.App. 171, 174–75 (1991).

■ The March 30, 1987, BVA opinion in this case described appellant's condition as "severe industrial impairment." In 1987, as discussed above, a finding of "severe" industrial impairment qualified a veteran for a rating of 50–percent. We see nothing in the 1989 BVA decision or in the record which justifies the change to "considerable." It is possible that the Board panel followed the procedure set out by the General Counsel:

> If the Board Section reviewing the case agrees with the prior factual determination that the veteran's symptoms produce "severe" impairment, clearly it should not be foreclosed from making the same determination and hence concluding that a 70% rating is warranted (on the basis of liberalizing criteria [referring to the revision of the regulations in 1988]). Indeed, ... the Section would seem to have little alternative but to reach that conclusion. However, ... the Section would also have the latitude to find, on the basis of the present evidentiary picture, that the (unchanged) symptomatology is better characterized as representing "considerable" impairment instead of "severe" ...

VA O.G.C. Prec. 7–89 at 2 (Mar. 8, 1989). It is also possible that the panel inverted the decision process and concluded that the rating percentage should be kept the same and then made the wording of their factual findings consistent with that determination. However, the changes to the terms in 38 C.F.R. § 4.132 which were made to provide consistency to the descriptions of social and industrial impairment within the various categories of psychiatric disorders were not "aligned simply for alignments sake." *Id.* Thus, all things being equal, if the evidence remained unchanged (and so supported a finding of "severe" industrial impairment), the clear intent of the 1988 change to the diagnostic code was that there be an upward revision to a 70–percent rating. The BVA decision can be read to have inverted this process and kept the 50–percent rating

because there was no change in the evidence. In any event, the analysis in the decision is wholly inadequate to support its conclusion. The case must be remanded. At a minimum, the BVA must clearly explain the basis for changing the finding of industrial impairment to "considerable" from "severe" and provide the missing analysis of why appellant is not entitled to a 70–percent rating.

We do not mean to imply that a remand, such as is done here, is merely for the purposes of rewriting the opinion so that it will superficially comply with the "reasons or bases" requirement of 38 U.S.C. § 7104(d)(1) (formerly § 4004). A remand is meant to entail a critical examination of the justification for the decision. The Court expects that the BVA will reexamine the evidence of record, seek any other evidence the Board feels is necessary, and issue a timely, well-supported decision in this case.

The decision of the Board is REVERSED and the case is REMANDED to the BVA for action consistent with this opinion.