**Edward J. FISHER, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

No. 90–1179.

United States Court of Veterans Appeals.

Submitted March 5, 1992.

Decided May 15, 1992.

Joseph A. Violante, Washington, D.C., was on the brief, for appellant.

Robert E. Coy, Acting General Counsel, Barry M. Tapp, Asst. General Counsel, Andrew J. Mullen, Deputy Asst. General Counsel, and Angela Foehl, Washington, D.C., were on the pleadings, for appellee.

Before MANKIN, HOLDAWAY, and IVERS, Associate Judges.

MANKIN, Associate Judge:

Edward J. Fisher, a combat veteran of the conflict in Vietnam, seeks reversal of an August 14, 1990, Board of Veterans' Appeals (BVA or Board) decision that denied him entitlement to an increased rating for panic disorder with mild agoraphobia, currently evaluated as 10% disabling. *Edward J. Fisher*, BVA 90–27887 (Aug. 14, 1990). We find that the Board, in denying appellant an increased disability rating, failed to explain adequately why it apparently discounted evidence favorable to appellant's claim. Such failure constitutes a violation of the requirement of 38 U.S.C. § 7104(d)(1) (formerly § 4004(d)(1)) that the Board provide a written statement of reasons or bases for its findings and conclusions. *See Smith v. Derwinski*, 2 Vet.App. 137, 141 (1992); *Willis v. Derwinski*, 1 Vet.App. 63, 66 (1990); *Gilbert v. Derwinski*, 1 Vet.App. 49, 59 (1990). We therefore vacate the BVA decision and remand the case for further adjudication.

## I. BACKGROUND

Edward J. Fisher served in the U.S. Army from March 1969 to October 1970. Prior to military service, he was employed as a machine operator. He was injured by a land mine blast while on patrol in Vietnam, and was later discharged from service with an 80% disability rating for the residuals of his injuries. Despite his physical disabilities, he was able to resume his industrial job after his military discharge. In 1975, while still employed as a machine operator, he began experiencing panic attacks for which his physician prescribed treatment with Valium (it appears from the record that Valium was also a part of the program of treatment for appellant's physical pain). Appellant lost his job in 1983 when the plant at which he worked shut down. Thereafter, he took a lower-paying job as a state park maintenance worker. Throughout this time, he continued to receive prescriptions for Valium and also continued to experience panic attacks.

In 1985, appellant was diagnosed as suffering from post-traumatic stress disorder (PTSD). In 1987, impressions of panic disorder with mild agoraphobia (abnormal fear of being in open or public places) were noted. In April 1988, Captain William G. Wall, a U.S. Air Force physician who had treated appellant, noted concerns that his patient had become dependent on Valium. He described appellant's social adaptability as "substantially impaired" and his industrial impairment as "severe ... with poor prognosis for improvement"; he also recommended that the veteran be awarded a 50% disability rating for his panic disorder. R. at 8. In June 1988, a Veterans' Administration (now the Department of Veterans Affairs) (VA) physician found appellant to be "moderately to severely psychiatrically impaired." R. at 10. Apparently upon the request of appellant or his service representative, Captain Wall again commented on appellant's panic disorder in November 1988, stating:

> Mr. Fisher suffers from a Panic Disorder with mild to moderate agoraphobia which is proximately due to and the result of a service connected injury. He would not suffer from this psychoneurotic condition with its moderate to severe impact on his social and occupational capacities were it not for his service connected injury.

R. at 65.

In April 1989, the veteran was admitted to a hospital, apparently for observation in connection with his disability claim for his panic disorder. A psychologist who examined him on this occasion described his condition as panic disorder without agoraphobia, PTSD, or significant depressive symptoms. The psychologist noted that Fisher reported that his attacks occurred two or three times a month, each for ten minutes duration when controlled with Valium. The psychologist also noted that "[Fisher's] symptoms cause little disruption in his activities or daily living." R. at 70. In June 1989, a board of three psychiatrists, reviewing appellant's medical reports upon request of the Indianapolis, Indiana, Regional Office, diagnosed "[p]anic disorder with mild agoraphobia" and "[u]nderlying compulsive personality with some passive-dependent traits." R. at 75. Apparently basing its judgment chiefly on the board of psychiatrists' report, a VA rating board

awarded Fisher a 10% disability rating for his panic disorder in September 1989.

Appellant promptly filed a Notice of Disagreement with the rating board's decision. In March 1990, he appeared at a personal hearing at the regional office along with his wife, where he testified that he experienced panic attacks whenever his boss "would tell [him] to go someplace", which occurred "maybe twice a week," but that he forced himself to continue working with the aid of medication. R. at 102. He also reported that he had not traveled away from his hometown in 12 years. R. at 103. Appellant testified that he felt he was no longer physically and mentally capable of handling the type of industrial work he had performed earlier in his career. He stated that he was able to tolerate the state park maintenance job, however, because it permitted him more flexibility in scheduling his time. R. at 108. Appellant's wife testified that she and her husband had made an aborted attempt to travel to Florida, only getting 30 miles from home before her husband decided to turn around. She also testified that, more recently, he had improved to the point of being able to take small trips. R. at 104–05. She reported that her husband's attacks typically lasted "an hour or so," and would occur whenever he had to work harder than normal on his job. R. at 106. Following the hearing, appellant submitted an additional written statement in which he attempted to clarify his hearing testimony. He stated that, in addition to the severe attacks that he experienced two or three times a week, he also experienced less severe attacks every day, whenever his leg pain would flare up. R. at 110–11. As a result, on most days he would leave or avoid work for an hour or two. R. at 111.

After reviewing the evidence, the hearing officer continued the 10% disability rating for appellant's panic disorder. Similarly, in August 1990, the BVA found that Fisher's panic disorder was not more than 10% disabling according to the rating schedule promulgated by the Secretary of Veterans Affairs. A timely Notice of Appeal followed.

## II. ANALYSIS

■ The criteria for assignment of a 30% rating for generalized anxiety disorder are as follows:

> Definite impairment in the ability to establish or maintain effective and wholesome relationships with people. The psychoneurotic symptoms result in such reduction in initiative, flexibility, efficiency and reliability levels as to produce definite industrial impairment.

38 C.F.R. § 4.132, DC 9400 (1991).

The criteria for assignment of a 10% rating are:

> Less than criteria for the 30 percent, with emotional tension or other evidence of anxiety productive of mild social and industrial impairment.

*Id.*

The record before us includes medical evidence of some significance that would support a disability rating in excess of 10%. *See* R. at 7–10, 65. Yet, the BVA's decision in this case clearly lacks any meaningful discussion of such evidence. Further, there is no indication that the Board gave any consideration to appellant's post-hearing letter concerning the nature and frequency of his panic attacks.

■ Since this Court's inception, we have consistently held that, as a Court of review, it is our obligation to require the BVA to provide reasons or bases for its factual and legal determinations. *Douglas v. Derwinski*, 2 Vet.App. 103, 108 (1992); *Webster v. Derwinski*, 1 Vet.App. 155, 159 (1991); *Gilbert*, 1 Vet.App. at 57; *see* 38 U.S.C. § 7104(d)(1). This is especially so where, as here, such a determination is material to the ultimate decision and is inconsistent with much of the relevant evidence in the record. *Webster*, 1 Vet.App. at 159. Here, the BVA violated this statutory requirement by virtue of its failure to explain why it apparently assigned little weight to the evidence in appellant's favor.

■ The BVA's determination of a veteran's degree of disability is a finding of fact subject to review under the "clearly erroneous" standard. *Lovelace v. Derwinski*, 1

Vet.App. 73, 74 (1990); *see also* 38 U.S.C. § 7261(a)(4) (formerly § 4061(a)(4)). Nevertheless, "[s]uch a determination ... requires a decisional document which allows for effective judicial review." *Cartright v. Derwinski*, 2 Vet.App. 24, 26 (1991). Regardless of whether the BVA's determination that appellant is entitled to no more than a 10% disability rating for his service-connected panic disorder is correct, the Board's decision in this case is inadequate for the Court's review. We therefore remand the case to the Board with instructions to comply with 38 U.S.C. § 7104(d)(1). *See Sammarco v. Derwinski*, 1 Vet.App. 111, 113–14 (1991). In the remand proceeding, the Board should address, as it did not in the decision on appeal, the applicability of 38 C.F.R. § 4.130 (1991), along with that regulation's admonition that "[t]he rating board must not underevaluate the emotionally sick veteran with a good work record...."

### III. CONCLUSION

As we have repeatedly stated, a remand is not "merely for the purposes of rewriting the opinion so that it will superficially comply with the 'reasons or bases' requirement of 38 U.S.C. § 7104(d)(1). A remand is meant to entail a critical examination of the justification for the decision." *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991).

The BVA's decision of August 14, 1990, is VACATED, and the case is REMANDED for proceedings consistent with this opinion.

*It is so Ordered.*