**Guido DeLUCA, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 91–1712.**

United States Court of Veterans Appeals.

May 18, 1993.

Before STEINBERG, Associate Judge.

## MEMORANDUM DECISION

STEINBERG, Associate Judge:

The appellant, Korean conflict veteran Guido DeLuca, appeals from a June 6, 1991, decision of the Board of Veterans' Appeals (BVA or Board) denying an increased rating for his service-connected left-shoulder disability, currently rated as 20% disabling. *Guido DeLuca*, BVA 91–17756 (June 6, 1991). The veteran asserts the following errors in the BVA decision: (1) failure to apply 38 C.F.R. § 4.40 (1992) in evaluating the severity of his left-shoulder disability; (2) clear error, requiring reversal, in the Board's denial of an increased rating for that disability; (3) failure to consider psychological symptoms in the evaluation of the left-shoulder disability; and (4) failure to assist in the development of claims for service connection for ulcer and a nervous disorder, and to adjudicate those claims and a total disability claim. The Secretary of Veterans Affairs seeks affirmance of the BVA decision. Summary disposition is appropriate in this case because it is one "of relative simplicity" and the outcome is controlled by the Court's precedents and is "not reasonably debatable". *Frankel v. Derwinski*, 1 Vet.App. 23, 25–26 (1990). The Court will vacate the BVA decision and remand the matter.

## I. Background

In a May 1987 decision effectuating an April 1987 BVA decision, a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) awarded the veteran a 10% disability rating for his service-connected arthralgia of the left shoulder. R. at 1. Arthralgia is defined as "pain in a joint". DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 147 (27th ed. 1988) [hereinafter DORLAND'S]. In May 1989, the veteran filed with the RO a claim for an increased rating for that disability based on "[l]imitation of motion and pain". R. at 5. In support of his claim he submitted an April 1989 letter from a private physician, Dr. Bernard C. Scherer, stating that he had treated the veteran since 1986 for left upper thorax and periscapular pain resulting from an in-service artillery shell explosion; that upon examination in September 1988 the veteran had constant throbbing pain in the left shoulder and left-arm abduction was limited to 45 degrees; and that X rays in September 1988 had revealed mild degenerative disease of the cervical spine but a normal left scapula. R. at 6. Dr. Scherer stated that the condition was chronic and would flare up at times, and that it would sometimes become so severe that the veteran "may be unable to work." *Ibid.*

On a June 1989 VA medical examination, the left shoulder appeared normal on X rays and the examiner noted 90 degrees of flexion, 60 degrees of external rotation, and 45 degrees of abduction in both shoulders. R. at 11. The examiner further stated that there

was no swelling or tenderness, and that the veteran had "good muscle bulk", and full motor strength in all groups. *Ibid.* The diagnoses were "frozen left shoulder" and arthritis of the cervical spine. R. at 12. In October 1989, the RO denied the claim for an increased rating for the left-shoulder disability. R. at 13. In October 1989, the veteran filed with the RO a timely Notice of Disagreement to that decision. R. at 14.

The veteran appeared at a February 1990 personal hearing before the RO, acting for the BVA, and testified under oath that the pain in his shoulder became more severe during cold weather and sometimes became so severe that he was unable to use his arm and would have to leave work. R. at 22, 27. He further testified that the VA examiner in April 1989 had not properly examined his left-arm range of motion. R. at 25. The hearing officer requested another VA examination and stated in the instructions to the examiner: "Be sure to list all objective findings including [range of motion] inadequacies, atrophy, tenderness, and painful motion". R. at 31. In the ensuing April 1990 VA examination, the examiner stated that the veteran had left-shoulder abduction of 50 degrees, anterior extension of 40 degrees, posterior extension of 35 degrees, and slight limitation of internal rotation. R. at 32. He noted that tendon reflexes were normal, and that the veteran stated that he obtained relief from discomfort by holding his arm behind his back. *Ibid.* The impression was: "Frozen shoulder syndrome on the non-dominant side with some degree of psychogenic overlay. It is my impression that the restricted mobility found was in part due to voluntary guarding." R. at 33. The hearing officer in June 1990 concluded that, giving the veteran the benefit of the doubt, his symptoms were consistent with a 20% disability rating. R. at 35. In a June 1990 decision, the RO awarded a 20% rating for the veteran's left-shoulder disability. R. at 36.

The veteran subsequently submitted a March 1989 letter from Dr. Michael Levine, a private orthopedist, stating that he had examined the veteran in March 1989 and that the veteran had reported having significant periodic pain during cold weather, but had gone through the summer without difficulty. R. at 38. Dr. Levine stated that the veteran had a full range of motion in the neck and upper extremity, that X rays and neurological examination of the scapula were normal, that there was no significant atrophy in the shoulder girdle, and that the veteran's "elevation is 180 [degrees] without pain, external rotation is 90 [degrees,] and ... internal rotation is T8 which is symmetric with the other side." *Ibid.* The diagnostic impression was "scapulothoracic bursitis, left arm". *Ibid.* (Scapulothoracic bursitis is "inflammation and calcification of the subacromial or subdeltoid bursa, resulting in pain, tenderness, and limitation of motion in the shoulder", DORLAND'S, at 247, 1670.) The veteran also submitted a November 1988 private physical therapist's report, stating that the veteran had reported pain levels of 5–6 on a scale of 10; that there were moderate spasms in the left paraspinal and scapular region; that left-arm external rotation was limited to 80 or 90% while internal rotation was normal; that elevation and abduction of the shoulder were limited to 110 degrees; and that there was weakness throughout the entire left arm. R. at 60.

In its June 1991 decision, the BVA stated that the veteran had expressed a desire to claim service connection for peptic ulcer disease, to reopen his claim for service connection for a nervous condition, and to claim a total disability rating based on individual unemployability due to service-connected disabilities (TDIU), but that those claims had not been developed by the RO and were thus referred back to the RO "for appropriate development and disposition." *DeLuca,* BVA 91–17756, at 2. With respect to the left-shoulder-disability claim, the Board stated that a rating greater than the veteran's current 20% rating required a finding that arm motion is limited to 25 degrees from the side. The Board then noted that the April 1990 VA examination had found the left-shoulder range of motion limited to abduction of 50 degrees, anterior extension of 40 degrees, and posterior extension of 35 degrees, and, therefore, concluded that the veteran was not entitled to an increased rating for his left-shoulder disability. *Id.* at 4.

## II. Analysis
### A. 38 C.F.R. § 4.40

■ Appellant asserts that the Board erred in failing to apply 38 C.F.R. § 4.40, and that the Court should reverse the BVA decision and award an increased rating under that regulatory provision. Pursuant to that regulation, a disability rating may be based on "functional loss . . . due to pain, supported by adequate pathology and evidenced by the visible behavior of the claimant undertaking the motion." 38 C.F.R. § 4.40 (1992); *see Schafrath v. Derwinski,* 1 Vet.App. 589, 592–93 (1991); *Ferraro v. Derwinski,* 1 Vet.App. 326, 330 (1991). Furthermore, 38 C.F.R. § 4.45 provides that in rating disabilities of joints, "inquiry will be directed to" "[w]eakened movement", "[e]xcess fatigability", "[i]ncoordination", and "[p]ain on movement", in addition to limitation of motion. *See also* 38 C.F.R. § 4.40 (1992) ("[w]eakness is as important as limitation of motion, and a part which becomes painful on use must be regarded as seriously disabled").

Therefore, "[w]here, as here, the claimant asserts to the BVA facts which would support a rating of compensable functional loss due to pain, section 4.40 must be applied to determine if [an increased] rating is warranted." *Schafrath, supra; see also EF v. Derwinski,* 1 Vet.App. 324, 326 (1991) (Board must " 'review all issues which are reasonably raised from a liberal reading' " of "all documents or oral testimony submitted prior to the BVA decision" (quoting *Myers v. Derwinski,* 1 Vet.App. 127, 129 (1991)); *Douglas v. Derwinski,* 2 Vet.App. 435, 438–40 (1992) (en banc). In the instant case, the veteran clearly raised the issue of painful motion in his May 1989 application for an increased rating on the basis of "[l]imitation of motion and pain". R. at 5. Indeed, the veteran's condition has been classified by the RO as "Arthralgia", or "pain in a joint" (DORLAND'S, at 147), and the medical evidence of record contains many references to the veteran's pain in his shoulder. R. at 6, 32, 38, 44, 60.

The Board, however, based its evaluation of the disability entirely on the recorded limitation of motion. Although it is possible that the examiners took into account the functional disability due to pain in determining the veteran's limitation of motion, neither the record nor the BVA decision contains clear indication that they did so. It seems no less plausible that the examiners may have recorded only the actual limitation of motion and may not have considered whether there was any additional disability due to pain or weakness of the left shoulder. Therefore, remand is required for the Board to consider and discuss the applicability of 38 C.F.R. § 4.40 in determining whether the veteran is entitled to an increased rating for his service-connected left-shoulder disability. On remand, the Board must, pursuant to 38 U.S.C.A. § 7104(d)(1) (West 1991), provide an adequate statement of the reasons or bases for its findings and determinations and "account for the evidence which it finds to be persuasive or unpersuasive", *Gilbert v. Derwinski,* 1 Vet.App. 49, 57 (1990), including the veteran's own account of the severity of his left-arm disability in his February 1990 VA sworn testimony. *See Hatlestad v. Derwinski,* 1 Vet.App. 164, 169–70 (1991).

■ Determination of whether the application of sections 4.40 and 4.45 entitles the veteran to an increased rating requires factual findings as to the extent to which the veteran's left-shoulder pain and weakness cause additional disability beyond that reflected in the measured limitation of his left-shoulder motion. This Court is a court of review and may not make such factual findings in the first instance. *See* 38 U.S.C.A. § 7261(a)(4) (West 1991); *see Webster v. Derwinski,* 1 Vet.App. 155, 159 (1991). Therefore, remand, rather than reversal as sought by the appellant, is the appropriate remedy at this time.

### B. Psychiatric Symptoms

■ The appellant also asserts that, because the VA examiner in April 1990 diagnosed "[f]rozen shoulder syndrome . . . with some degree of psychogenic overlay" (R. at 33), the Board was required to consider and discuss whether the veteran had psychiatric symptoms associated with his left-shoulder disability and whether he was entitled to an increased rating for his left-shoulder disability on the basis of these psychiatric symptoms. However, the VA examiner's state-

ment is not, as the appellant suggests, a diagnosis of a psychiatric symptom or condition resulting from the service-connected left-shoulder condition. The term "psychogenic" refers to a condition "produced or caused by psychic or mental factors rather than organic factors" (DORLAND'S, at 1384) and the term "overlay" refers to "a later addition superimposed upon an already existing mass, state, or condition" (DORLAND'S, at 1204). Therefore, neither the April 1990 VA physician's opinion nor anything else in the record may reasonably be read to suggest that the veteran has a psychiatric symptom or condition which was caused by his service-connected left-shoulder disability. Because no such issue was reasonably raised to the Board by the evidence of record, the Board was not required to address it. *See Douglas, supra; EF, supra; Myers, supra.*

### C. Additional Claims

The appellant asserts that the Board erred in failing to develop and adjudicate his claims for service connection for peptic ulcer disease and for reopening of his claim for service connection for a nervous condition. In its June 1990 decision, the Board stated that those claims, as well as his TDIU claim, had been referred to the RO for development and adjudication because they had not previously been developed by the RO. *DeLuca,* BVA 91–17756, at 2. Although the Board is required to adjudicate claims reasonably raised to it, *see Douglas, supra; EF, supra; Myers, supra,* the Court has also held that, where a reasonably raised claim has not been adjudicated by the RO, it may be necessary for the BVA to remand the claim to the RO for development and adjudication to ensure that the claimant is provided with his or her full procedural rights under the governing law and regulation. *Bernard v. Brown,* 4 Vet.App. 384, 392–94 (1993). In the present case, the Court finds no error in the Board's decision to refer the ulcer, nervous condition, and TDIU claims to the RO for development and adjudication in the first instance.

### III. Conclusion

Upon consideration of the record and the briefs of the parties, the Court summarily vacates the June 6, 1991, BVA decision, and remands the matter for prompt further readjudication, consistent with this decision, on the basis of all evidence and material of record and all applicable law and regulation. *See Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1992). "On remand, the veteran will be free to submit additional evidence and argument" on the issues at hand. *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992).

VACATED AND REMANDED.