**Guido DeLUCA, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 94–242.**

United States Court of Veterans Appeals.

Argued July 31, 1995.

Decided Sept. 22, 1995.

Susan Paczak, Pittsburgh, PA, for the appellant.

Amy S. Gordon, Washington, DC, with whom Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; and Adrienne Koerber, Deputy Assistant General Counsel, were on the brief, for the appellee.

Before NEBEKER, Chief Judge, and KRAMER and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, Korean conflict veteran Guido DeLuca, appeals an October 28, 1993, Board of Veterans' Appeals (BVA or Board) decision denying entitlement to an increased disability rating for a left-shoulder disorder, currently evaluated as 20% disabling. Record (R.) at 9. Both parties filed briefs. This is the second time this case has been before the Court. The BVA decision currently here on appeal was issued pursuant to a May 1993 Court decision vacating a June 1991 Board decision and remanding the matter. For the reasons that follow, the Court will vacate the October 1993 Board decision and remand the matter again.

## I. Background

The veteran served on active duty in the U.S. Army from October 1952 to October 1954. R. at 51. He asserts that his entire left side, including his shoulder, was injured "when a shell exploded near him" during service. Brief (Br.) at 7; *see also* R. at 100–01. A service medical record (SMR) dated July 1954 records the veteran's complaint of "shrapnel" in his foot (R. at 38), but there is no diagnosis of or treatment for a shrapnel injury noted in his SMRs (*see* R. at 23–51, 100, 107, 144). In March 1984, the BVA recommended that service connection be awarded administratively by the Veterans' Administration (now Department of Veterans Affairs) (VA) for "arthralgia of the left shoulder". R. at 145. ("Arthralgia" is "pain in a joint", DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 147 (27th ed. 1988).) A February 1985 VA regional office (RO) decision grant-

ed service connection for left-shoulder arthralgia, effective from February 1982, rated 0% disabling. In an April 1987 decision, the Board granted entitlement to a 10% disability rating for left-shoulder arthralgia, effective from February 1982. R. at 206, 208.

A private orthopedist, Dr. Levine, in a March 1989 medical report, noted an impression of "scapulothoracic bursitis, left arm", and found the patient to be "totally asymptomatic" at that time. R. at 255. The veteran also submitted an April 1989 statement from a private physician, Dr. Scherer, who stated that when he had evaluated the veteran in September 1988 "he was having constant throbbing pain [and] was unable to raise his left arm above his head and in fact he could only abduct his arm at 45° from the body"; the physician further noted that "it is going to be a chronic problem and it does tend to flare [up] at times although he will have some good days." R. at 212.

A June 1989 VA medical examination report diagnosed a "[f]rozen [l]eft shoulder" and "arthritis [of the] cervical spine (C 5–7)". R. at 218. An April 1990 VA medical examination report noted that left-shoulder abduction was 50°, anterior extension was 40°, posterior extension was 35°, and internal rotation was "only slightly limited". R. at 246. The "impression" was "frozen shoulder syndrome on the non-dominant side with some degree of psychogenic overlay" and that "restricted mobility ... was in part due to voluntary guarding." R. at 247. A June 1990 VARO decision increased the left-shoulder rating to 20% disabling, effective May 1989. The BVA denied a further increase in the rating in a June 6, 1991, decision (R. at 312), and the veteran appealed to this Court.

In May 1993, the Court issued a memorandum decision vacating the June 1991 BVA decision and remanding the matter for "prompt further readjudication, consistent with this decision, on the basis of all evidence and material of record and all applicable law and regulation". *DeLuca v. Brown,* 6 Vet. App. 321 (1993) (mem. dec.). The Court ordered the Board to consider the application of 38 C.F.R. § 4.40 regarding functional loss due to pain; 38 C.F.R. § 4.45 regarding weakness, fatigability, incoordination, or pain

on movement of a joint; and the Court's decisions in *Schafrath v. Derwinski,* 1 Vet. App. 589 (1991), and *Ferraro v. Derwinski,* 1 Vet.App. 326 (1991).

The October 1993 BVA decision currently here on appeal was issued pursuant to the Court's May 1993 memorandum decision. The record does not indicate that the BVA undertook any further factual development on remand, or that the veteran submitted additional evidence or comment. The BVA determined that §§ 4.40 and 4.45 did not provide for an increased rating for the veteran's left-shoulder disability because that disability had been rated under 38 C.F.R. § 4.71, Diagnostic Code (DC) 5201, which "contemplates the functional loss resulting from pain on undertaking motion." R. at 12. The BVA further determined that § 4.45 did not provide for an increased rating in the instant case because "[w]eakened movement and excess fatigability usually are associated with muscle injury"; because "[i]ncoordination is usually associated with disease or injury affecting the peripheral nerves"; and because this veteran's disability was not associated with "nerve injury" or "muscle injury", as such, to the left shoulder girdle". R. at 12–13.

## II. Analysis
### A. 38 C.F.R. § 4.40

In its October 1993 decision, the BVA cited DC 5201, which provides the following disability ratings for limitation of motion of the minor arm:

| | |
|---|---|
| To 25° from side ................... | 30% |
| Midway between side and shoulder level ........................... | 20% |
| At shoulder level ................. | 20% |

38 C.F.R. § 4.71, DC 5201 (1994). The Board found that no increase was warranted in the veteran's 20% disability rating because the April 1990 VA examination report had indicated that his left-shoulder anterior extension was 40° and abduction was 50° and these motion ranges more closely approximated the 45° which constitutes motion to "[m]idway between side and shoulder level" than they did the motion range to 25° required for a 30% rating. R. at 10–11; *see* 38 C.F.R. § 4.7 (1994) ("Where there is a question as to which of two evaluations shall be

applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned.").

The regulation for musculoskeletal-system functional loss in § 4.40 provides:

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance. It is essential that the examination on which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and *a part which becomes painful on use must be regarded as seriously disabled.* A little used part of the musculoskeletal system may be expected to show evidence of disuse, either through atrophy, the condition of the skin, absence of normal callosity[,] or the like.

38 C.F.R. § 4.40 (1994) (emphasis added). The BVA stated that it was not necessary to rate the veteran's pain separately under § 4.40 in the instant case because "where a diagnostic code, such as 5201, provides a compensable rating for limitation of motion of a major joint, that compensable rating contemplates the functional loss resulting from pain on undertaking motion" (R at 11–12), and thus, the Secretary concludes, the Board did apply § 4.40 sufficiently (Br. at 10). In support of its conclusion, the Board cited 38 C.F.R. § 4.14, "Avoidance of pyramiding", which provides:

The evaluation of the same disability under various diagnoses is to be avoided. Disability from injuries to the muscles, nerves, and joints of an extremity may overlap to a great extent, so that special rules are in-

cluded in the appropriate bodily system for their evaluation. Dyspnea, tachycardia, nervousness, fatigability, etc., may result from many causes; some may be service connected, others, not. Both the use of manifestations not resulting from service-connected disease or injury in establishing the service-connected evaluation, and the evaluation of the same manifestation under different diagnoses are to be avoided.

38 C.F.R. § 4.14 (1994).

■ The Board's and the Secretary's interpretation is that, because pain can cause limitation of motion, any regulation that specifies a rating for limitation of motion ipso facto includes a rating for pain, and thus the application of § 4.40 in the instant case would constitute pyramiding of ratings. The Secretary asserts that, although "the BVA may have been overbroad in its discussion regarding [DCs] involving limitation of motion", the Board was nevertheless correct in its assertion that pain was considered in rating the veteran in this particular case. Br. at 10. The Secretary cites the April 1990 VA medical examination report which noted that the veteran's range of motion was affected by "voluntary guarding" (R. at 247), and argues that, "[c]onsequently", the veteran's "pain was considered in determining the appropriate evaluation for his disability". Br. at 10. In fact, the Board stated specifically:

In the present case, the veteran's complaints of pain have been considered.... We note that the examiner indicated that the veteran's range of motion was limited by guarding. Thus, the presence of or anticipation of pain in the left shoulder prevented the veteran from attaining fuller range of motion than demonstrated on examination. The veteran's current award is based, in part, on his left shoulder pain which inhibits left shoulder motion.

R. at 12.

Range of motion undoubtedly can be affected by pain in certain situations, and a limitation of motion due to pain might indeed be reflected in a rating under DC 5201. However, § 4.40 specifically refers to disability due to lack of normal "endurance", provides for a rating to be based on "functional loss ... due to ... pain", and states that "a

part which becomes painful *on use* must be regarded as seriously disabled" (emphasis added). Furthermore, § 4.40 provides that "*[i]t is essential* that the [rating] examination ... adequately portray the ... functional loss" (emphasis added). The veteran has testified under oath that his arm becomes painful on use during the winter months and causes him to miss work (R. at 14, 235–36), and there is medical evidence that his shoulder condition will flare up at times (R. at 212).

■ The April 1990 VA examination relied upon by the BVA merely recorded the veteran's range of motion at that time, and did not indicate consideration of the factors cited in § 4.40, and required by § 4.40 to be considered and portrayed in the rating examination, as to functional loss on use or due to flare-ups. *See Voyles v. Brown*, 5 Vet.App. 451, 453 (1993) (Board decision "specifically noted the limitation of motion" but "failed to make any findings *as to the extent* of the appellant's pain on motion" pursuant to §§ 4.40 and 4.45 (emphasis added)); *see also Ferraro*, 1 Vet.App. at 330. When a medical examination report "does not contain sufficient detail", the adjudicator is required to "return the report as inadequate for evaluation purposes." 38 C.F.R. § 4.2 (1994); *see also Bierman v. Brown*, 6 Vet.App. 125, 129 (1994) (medical examiner must "furnish[ ], in addition to the etiological, anatomical, pathological, laboratory[,] and prognostic data required for ordinary medical classification, full description of the effects of disability upon the person's ordinary activity") (quoting 38 C.F.R. § 4.10 (1994)); *Schafrath*, 1 Vet.App. at 595. Accordingly, the case must be remanded for the Board to obtain a new medical examination which complies with the requirements of § 4.40, and the medical examiner must be asked to express an opinion on whether pain could significantly limit functional ability during flare-ups or when the arm is used repeatedly over a period of time. *See Voyles*, 5 Vet.App. at 454. Because DC 5201 provides for a rating solely on the basis of loss of range of motion, these determinations should, if feasible, be "portray[ed]" (§ 4.40) in terms of the degree of additional range-of-motion loss due to pain on use or during flare-ups. *Cf. Lathan v. Brown*, 7

Vet.App. 359, 367 (1995) (in ordering medical opinion on remand in dependency and indemnity compensation case, VA should "consider the feasibility of requesting that the physician express in percentage terms the probability that the veteran's service-connected disability caused or contributed to death").

The Court holds that DC 5201 does not subsume 38 C.F.R. § 4.40, and that 38 C.F.R. § 4.14 does not forbid consideration of a higher rating based on a greater limitation of motion due to pain on use including during flare-ups. *See Schafrath*, 1 Vet.App. at 592–93 (holding that BVA's failure to consider § 4.40 was improper when that regulation had been made potentially applicable through assertions and issues raised in record); *see also Quarles v. Derwinski*, 3 Vet. App. 129, 139–40 (1992).

### *B. 38 C.F.R. § 4.45*

■ The Court's May 1993 memorandum decision noted that 38 C.F.R. § 4.45 "provides that in rating disabilities of joints, 'inquiry will be directed to' '[w]eakened movement', '[e]xcess fatigability', '[i]ncoordination', and '[p]ain on movement', in addition to limitation of motion." *DeLuca*, 6 Vet.App. at 324. The October 1993 BVA decision declined to apply § 4.45 in the instant case on the grounds that "[w]eakened movement and excess fatigability usually are associated with muscle injury" and "[i]ncoordination ... is usually associated with disease or injury affecting the peripheral nerves of the upper extremity", whereas the veteran's left-shoulder condition "has never been associated with muscle injury as such" and there was no "nerve injury". R. at 12–13. The Secretary adopted this argument. *See* Br. at 11. The Board cited the report from Dr. Levine, which stated that no significant atrophy of the left-shoulder girdle was found, and the 1990 VA medical report, which "described no weakness of movement or excess fatigability of the left shoulder girdle musculature." R. at 13. However, the 1990 VA medical report did not specify that there was no weakness of movement or excess fatigability of the left shoulder girdle musculature; it did not address these issues. R. at 245–47.

The Board's reading of § 4.45 cannot be sustained. The plain language of § 4.45 indicates that "[w]eakened movement", "[e]xcess fatigability", and "[i]ncoordination" do not refer solely to muscle and nerve conditions. First, the title of the regulation is "The joints", not "The muscles" or "The nerves". *Cf.* 38 C.F.R. § 4.50 ("Muscle injuries"); 38 C.F.R. § 4.51 ("Muscle weakness"); 38 C.F.R. § 4.52 ("Muscle damage"); 38 C.F.R. § 4.53 ("Muscle patterns"); and 38 C.F.R. § 4.54 ("Muscle groups"). Second, the first sentence of the regulation refers to the "factors of disability" of "the joints", and does not refer to muscles or nerves. Third, the parenthetical in paragraph (c) following "[w]eakened movement" refers to "muscle injury, disease or injury of peripheral nerves, divided or lengthened tendons, etc.". If "weakened movement" were intended to refer exclusively to muscle or nerve disability, the regulation would not mention "tendons" and would not say "etc.". The purpose of the list is to indicate that muscle and nerve disabilities are merely two of the factors that should be considered. Fourth, paragraphs (d) and (e), while referring to "[e]xcess fatigability" and "[i]ncoordination", do not limit their application to muscles or nerves. Accordingly, VA's interpretation of its regulation, even if that interpretation predated this litigation, *see Tallman v. Brown*, 7 Vet.App. 453, 463–65 (1995), is in conflict with the plain meaning of the regulation and therefore entitled to no deference. *See Combee v. Principi*, 4 Vet.App. 78, 91 (1993) (administrative agency's interpretation of regulation may be entitled to deference where meaning is unclear and interpretation "sensibly conforms to the purpose and wording of the regulations") (quoting *Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 151, 111 S.Ct. 1171, 1176, 113 L.Ed.2d 117 (1991)), *rev'd on other grounds sub nom. Combee v. Brown*, 34 F.3d 1039 (Fed.Cir.1994); *Combee v. Brown*, 5 Vet.App. 248, 257 (1993) (Steinberg, J., dissenting) (agency interpretation of regulation is not entitled to deference if inherently unreasonable).

Additionally, the medical records in this case do not expressly establish that there is no involvement of muscles or nerves in the veteran's disability. Therefore, it was error for the Board to so conclude based on its own medical judgment. *See Colvin v. Derwinski*, 1 Vet.App. 171, 175 (1991) ("BVA panels may consider only independent medical evidence to support their findings" and may not "refut[e] the expert medical conclusions in the record with [their] own unsubstantiated medical conclusions").

Consequently, in the examination ordered on remand, the medical examiner should be asked to determine whether the left-shoulder joint exhibits weakened movement, excess fatigability, or incoordination, and such inquiry should not be limited to muscles or nerves. *See Bierman, supra.* As noted above, these determinations should, if feasible, be expressed in terms of the degree of additional range-of-motion loss due to any weakened movement, excess fatigability, or incoordination. *Cf. Lathan, supra.* (The Court notes that an evaluation of "pain on movement" pursuant to § 4.45 would seem in this case to be duplicative of the § 4.40 requirement that pain on use must be evaluated.)

### C. Applicability of Schafrath v. Derwinski

The Court's May 1993 decision directed the BVA to consider *Schafrath, supra.* The Board decision attempted to distinguish *Schafrath* by stating that in that case the veteran had complaints of pain for which he was not being compensated because he had a noncompensable rating, whereas in the instant case the veteran is being compensated by his current 20% rating for his disability due to pain. The Secretary adopted this argument. *See* Br. at 13. In light of the Court's holding that DC 5201 does not subsume 38 C.F.R. §§ 4.40 and 4.45, the Board's conclusion is flawed. *See Quarles, supra.* On remand, the Board must consider the application of *Schafrath, Quarles,* and *Ferraro*, all *supra,* to the veteran's claim.

### D. Reasons or Bases

■ The Court stated in its May 1993 decision that "[d]etermination of whether the application of sections 4.40 and 4.45 entitles

the veteran to an increased rating requires factual findings as to the extent to which the veteran's left-shoulder pain and weakness cause additional disability beyond that reflected in the measured limitation of his left-shoulder motion." *DeLuca, supra.* The Board's statement of the reasons or bases for its October 1993 decision was not adequate under 38 U.S.C. § 7104(d)(1). The Board did not explain how pain on use was factored into its evaluation of the veteran's disability in terms of limitation-of-motion equivalency under DC 5201. For example, the Board found that the veteran's testimony was credible that in the winter months his shoulder condition caused him to miss "2 or 3 days of work a week". R. at 14. Yet, the Board did not explain how this impairment of the veteran's employment was evaluated under DC 5201 and § 4.40. *Cf.* 38 C.F.R. § 4.10 ("basis of disability evaluations is the ability ... to function under the ordinary conditions of daily life including employment"; medical examination must furnish "full description of the effects of disability upon the person's ordinary activity ...; person may be too disabled to engage in employment although he or she is up and about and fairly comfortable at home or *upon limited activity* ") (emphasis added).

### III. Conclusion

Upon consideration of the record and the submissions and arguments of the parties, the Court vacates the October 28, 1993, BVA decision and remands the matter for expeditious further proceedings, on the basis of all applicable law and regulation, and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1310, 5107(a), 7104(d)(1), 7261; 38 C.F.R. § 4.71a; *Fletcher v. Derwinski,* 1 Vet. App. 394, 397 (1991)—all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims "remanded" by BVA or the Court). *See Mason v. Brown,* 8 Vet.App. 44, 59 (1995). On remand, the appellant will be free to submit additional evidence and argument on the remanded claim,

and the Secretary will be free to seek further development. *See Quarles,* 3 Vet.App. at 141. A final decision by the Board following the remand herein ordered will constitute a new decision which, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant.

VACATED AND REMANDED.