Citation Nr: 1829764 
Decision Date: 07/24/18 Archive Date: 08/02/18

DOCKET NO. 08-35 985 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office in Montgomery, Alabama


THE ISSUES

1. Entitlement to a rating in excess of 10 percent for mechanical low back pain for the period prior through October 4, 2011, and a rating in excess of 20 percent thereafter, 

2. Entitlement to a higher rating for left sciatic nerve (previously rated as left lower extremity radiculopathy), rated as 10 percent disabling prior to August 25, 2017 and 20 percent thereafter.

3. Entitlement to a separate rating for right lower extremity radiculopathy.

4. Entitlement to a total rating for compensation purposes based on individual unemployability due to service-connected disabilities (TDIU).


REPRESENTATION

Veteran represented by: Veterans of Foreign Wars of the United States

WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

J. E. Miller, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the U.S. Army from June 1986 to July 1986 and in the U.S. Navy from April 1988 to June 1990. He also served with the Army National Guard of Tennessee.

This matter came before the Board of Veterans' Appeals (Board) on appeal from a May 2007 decision of the St. Petersburg, Florida, Regional Office (RO). In August 2008, the RO granted a separate compensable rating for left lower extremity radiculopathy. In August 2011, the Veteran was afforded a hearing before the undersigned Veterans Law Judge sitting at the Montgomery, Alabama, RO. A hearing transcript is in the record.

In August 2011, the Board remanded the appeal. In April 2012, the Appeals Management Center (AMC) increased the Veteran's low back rating to 20 percent, effective October 5, 2011. In May 2014, September 2015, and January 2017, the Board remanded the appeal. In October 2017, the Appeals Resource Center (ARC) recharacterized the Veteran's left lower extremity disorder as left sciatic nerve and increased his rating to 20 percent, effective August 25, 2017.





FINDINGS OF FACT

1. For the period from May 2, 2006, through October 4, 2011, the Veteran's back disorder caused degenerative disc disease (DDD); spondylosis; stenosis; arthritis; bilateral lower extremity radiculopathy; an abnormal, unsafe gait; severe pain which radiated into both lower extremities; hypoesthesia, paresthesias, and decreased strength in both lower extremities; decreased muscle strength in the hips; abnormal plantar reflexes; difficulty walking, standing, sitting, sleeping, climbing, balancing, stooping, kneeling, crouching, and crawling; fatigue, decreased motion, stiffness, weakness, spasms, guarding, and tenderness; flare-ups; prevented participation in hunting, fishing, and playing sports; required several pain medications and muscle relaxers, as well as steroid injections; impacted his ability to complete chores, shop, travel, feed himself, and dress himself; and resulted in flexion to 75 degrees, extension to 15 degrees, right lateral flexion to 25 degrees, left lateral flexion to 20 degrees, right lateral rotation to 35 degrees, and left lateral rotation to 20 degrees, with pain throughout the entire range of motion for each motion.

2. For the period on and after October 5, 2011, the Veteran's back disorder caused DDD; intervertebral disc syndrome (IVDS); arthritis; daily, constant, severe back pain; mild constant pain in both lower extremities; moderate left lower extremity paresthesias and/or dysesthesias; moderate left lower extremity numbness; moderate incomplete paralysis of the left sciatic nerve; right lower extremity weakness; an antalgic gait; decreased reflexes in both ankles and knees; decreased sensation in the left foot/toes; positive left straight leg raising test; difficulty bending, lifting, sitting, standing, weight-bearing, squatting, reaching, walking, kneeling, climbing stairs, sleeping, dressing himself, and cooking; flare-ups, excess fatigability, decreased range of motion after repeated use, functional impairment resulting in less movement than normal, and disturbance of locomotion; pain on palpation; prevented him from keeping a schedule due to unexpected symptoms, from playing ball with his grandkids, from being able to enjoy life, and from participating in hobbies he once enjoyed, including working on cars, hunting, fishing, riding horses, and riding motorcycles; and forward flexion limited to 30 degrees with pain, extension limited to 5 degrees with pain, right lateral flexion limited to 10 degrees with pain, left lateral flexion limited to 10 degrees with pain, right lateral rotation limited to 10 degrees with pain, and left lateral rotation limited to 15 degrees with pain.

3. The Veteran's service-connected lumbar spine and lower extremity nerve disorders do not prevent him from securing or following a substantially gainful occupation.


CONCLUSIONS OF LAW

1. The criteria for a rating of 20 percent from May 2, 2006 through October 4, 2011, for mechanical low back pain have been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.321, 3.326(a), 4.7, 4.10, 4.14, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5237, 5243 (2017).

2. The criteria for a rating of 40 percent since October 5, 2011 for mechanical low back pain have been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.321, 3.326(a), 4.7, 4.10, 4.14, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5237, 5243 (2017).

3. The criteria for a rating of 10 percent from May 2, 2006 through November 14, 2006, for left lower extremity radiculopathy have been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.321, 3.326(a), 4.7, 4.10, 4.14, 4.40, 4.45, 4.59, 4.124a, Diagnostic Code 8520 (2017).

4. The criteria for a rating in excess of 10 percent from November 15, 2006 through October 4, 2011, for left lower extremity radiculopathy have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.321, 3.326(a), 4.7, 4.10, 4.14, 4.40, 4.45, 4.59, 4.124a, Diagnostic Code 8520 (2017).

5. The criteria for a rating of 20 percent from October 5, 2011 through August 24, 2017, for left lower extremity radiculopathy have been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.321, 3.326(a), 4.7, 4.10, 4.14, 4.40, 4.45, 4.59, 4.124a, Diagnostic Code 8520 (2017).
6. The criteria for a rating in excess of 20 percent since August 25, 2017 for left sciatic nerve have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.321, 3.326(a), 4.7, 4.10, 4.14, 4.40, 4.45, 4.59, 4.123, 4.124a, Diagnostic Code 8620 (2017).

7. The criteria for a rating of 10 percent since May 2, 2006 for right lower extremity radiculopathy have been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.321, 3.326(a), 4.7, 4.10, 4.14, 4.40, 4.45, 4.59, 4.124a, Diagnostic Code 8520 (2017).

8. The criteria for a TDIU have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.326(a), 4.16 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and to Assist

VA has a duty to notify claimants about the claims process and a duty to assist them in obtaining evidence in support of their claim. VA has issued several notices to the Veteran including a December 2006 notice which informed him of the evidence generally needed to support his claim; what actions he needed to undertake; and how VA would assist him in developing his claim. The December 2006 notice was issued to the Veteran prior to the May 2007 rating decision from which the instant appeal arises. All identified and available relevant documentation has been secured to the extent possible and all relevant facts have been developed. There remains no question as to the substantial completeness of the claim. 38 U.S.C. §§ 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.326(a). For these reasons, the Board finds that the VA's duties to notify and to assist have been met.





II. Analyses

A. Increased Ratings

Disability evaluations are determined by comparing the Veteran's current symptomatology with the criteria set forth in the Schedule For Rating Disabilities. 38 U.S.C. § 1155; 38 C.F.R. Part 4.
 
Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation. Otherwise, the lower evaluation will be assigned. 38 C.F.R. § 4.7. 

The evaluation of the same disability under several diagnostic codes, known as pyramiding, must be avoided. Separate ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition is not duplicative of or overlapping with the symptomatology of the other condition. 38 C.F.R. § 4.14; Esteban v. Brown, 6 Vet. App. 259, 262 (1994). 

The Veteran's mechanical low back pain is rated according to diagnostic code 5237, which provides ratings for lumbosacral strain. A 10 percent rating is warranted for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height. A 20 percent rating is warranted for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, for the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, for muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent rating is warranted for forward flexion of the thoracolumbar spine 30 degrees or less or for favorable ankylosis of the entire thoracolumbar spine. A 50 percent rating is warranted for unfavorable ankylosis of the entire thoracolumbar spine. 38 C.F.R. § 4.71a, Diagnostic Code 5237. 

There are also several relevant note provisions associated with Diagnostic Code 5237. Note (1): Evaluate any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, separately, under an appropriate diagnostic code. 

Note (2): (See also Plate V.) For VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The normal combined range of motion of the thoracolumbar spine is 240 degrees. The normal ranges of motion for each component of spinal motion provided in this note are the maximum that can be used for calculation of the combined range of motion.
 
Note (3): In exceptional cases, an examiner may state that because of age, body habitus, neurologic disease, or other factors not the result of disease or injury of the spine, the range of motion of the spine in a particular individual should be considered normal for that individual, even though it does not conform to the normal range of motion stated in Note (2). Provided that the examiner supplies an explanation, the examiner's assessment that the range of motion is normal for that individual will be accepted. 

Note (4): Round each range of motion measurement to the nearest five degrees. 

Note (5): For VA compensation purposes, unfavorable ankylosis is a condition in which the entire cervical spine, the entire thoracolumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis. 

Note (6): Separately evaluate disability of the thoracolumbar and cervical spine segments, except when there is unfavorable ankylosis of both segments, which will be rated as a single disability. 38 C.F.R. § 4.71a, Diagnostic Code 5237. 

The Veteran has been diagnosed with IVDS which can, alternatively, be rated under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes. The method that results in the higher evaluation when all disabilities are combined under 38 C.F.R. § 4.25 is the method that should be utilized. 38 C.F.R. § 4.71a, Diagnostic Code 5243. 

Under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, a 10 percent rating is warranted for incapacitating episodes having a total duration of at least one week but less than 2 weeks during the past 12 months. A 20 percent rating is warranted for incapacitating episodes having a total duration of at least 2 weeks but less than 4 weeks during the past 12 months. A 40 percent rating is warranted for incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months. A 60 percent rating is warranted for incapacitating episodes having a total duration of at least 6 weeks during the past 12 months.

Note (1) provides that for purposes of evaluations under diagnostic code 5243, an incapacitating episode is a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. 
 
Note (2) provides that, if intervertebral disc syndrome is present in more than one spinal segment, provided that the effects in each spinal segment are clearly distinct, evaluate each segment on the basis of incapacitating episodes or under the General Rating Formula for Diseases and Injuries of the Spine, whichever method results in a higher evaluation for that segment. 38 C.F.R. § 4.71a, Diagnostic Code 5243. 

The Veteran's left lower extremity radiculopathy and sciatic nerve disorder has been rated both under diagnostic code 8520 for paralysis of the sciatic nerve and under 8620 for neuritis.

Neuritis, cranial or peripheral, characterized by loss of reflexes, muscle atrophy, sensory disturbances, and constant pain, at times excruciating, is to be rated on the scale provided for injury of the nerve involved, with a maximum equal to severe, incomplete, paralysis. See nerve involved for diagnostic code number and rating. The maximum rating which may be assigned for neuritis not characterized by organic changes referred to in this section will be that for moderate, or with sciatic nerve involvement, for moderately severe, incomplete paralysis. 38 C.F.R. § 4.123.

Diagnostic Code 8520 provides ratings for paralysis of the sciatic nerve. A 10 percent rating is warranted for mild incomplete paralysis, a 20 percent rating is warranted for moderate incomplete paralysis, a 40 percent rating is warranted for moderately severe incomplete paralysis, and a 60 percent rating is warranted for severe incomplete paralysis with marked muscular atrophy. 38 C.F.R. § 4.124a, Diagnostic Code 8520. Diagnostic Code 8620 provides ratings for neuritis. 38 C.F.R. § 4.124a, Diagnostic Code 8620.

A May 2, 2006, VA treatment record states that the Veteran had chronic low back pain with radiculopathy into both legs periodically and that his gait was slightly abnormal due to back pain. An October 2006 VA treatment record states that the Veteran had significant low back pain that radiated into both legs. Another October 2006 VA treatment record states that the Veteran had DDD and left leg radiculopathy. November 2006 VA treatment records state that the Veteran had low back paraspinals that radiated into the bilateral lower extremities and that the Veteran's gait was slightly abnormal due to low back pain. A November 2006 VA left lower extremity nerve conduction test indicated that the Veteran had radiculopathy. In his December 2006 claim for an increased rating, the Veteran wrote that his back disorder caused difficulty walking, standing, and sitting; that he was enrolled in physical therapy; and that he was taking medication.

An August 2007 VA treatment record states that the Veteran had lower extremity weakness and radiculopathy. Another August 2007 VA treatment record states that the Veteran had severe back pain which radiated down his legs. A diagnosis of DDD was advanced. A November 2007 VA treatment record states that the Veteran had daily low back pain, which was partially relieved with narcotics; his symptoms were worsened by sleep and lying in a supine position; and that he had bilateral radiculopathy. 

In January 2008, the Veteran was afforded a VA spine examination. At that time, he was taking several pain medications. He reported fatigue, decreased motion, stiffness, weakness, spasms, pain which increased with any activity and caused a decrease in function, and weekly flare-ups that lasted several hours each. He was unable to walk a distance of more than a few yards. On examination he had thoracic spine spasms, guarding, pain with motion, and tenderness. His gait was normal and he had no abnormal spine contour. He had decreased muscle strength in his hips, abnormal plantar reflexes, and no ankylosis. He had extension to 20 degrees, flexion to 85 degrees, right lateral flexion to 25 degrees, left lateral flexion to 25 degrees, right lateral rotation to 35 degrees, and left lateral rotation to 40 degrees. He had pain throughout the entire range of motion for each motion and active and passive ranges of motion were the same for each motion. He had pain, but no additional loss of range of motion, after repeated use. The examiner noted that the back disorder affected the Veteran's ability to complete chores, shop, travel, feed himself, and dress himself, and completely prevented exercise, sports, and recreation.

In February 2008, the Veteran underwent a private medical evaluation. The clinician noted that he had an unsafe gait and was shuffling his feet. He had tender spinal processes and hypertonicity of the quadratus musculature, which limited his range of motion. He was noted to have hypoesthesia of the lower extremities. He was diagnosed with spinal spondylosis and stenosis, degeneration and protrusion in multiple lumbar discs, annular tear of the L3-L4, and bilateral lumbar radiculopathy. 

A March 2008 back assessment completed as part of a Social Security Administration (SSA) benefits application states that the Veteran could occasionally lift 20 pounds, frequently lift 10 pounds, could stand and/or walk about 6 hours in an 8 hour work day, could sit about 6 hours in an 8 hour work day, and had unlimited ability to push and/or pull. The examiner noted that the Veteran had decreased range of motion, tenderness and spasms, hypesthesias bilaterally in the L3-S1 dermatome, decreased strength in the lower extremities, and normal balance, heel to toe testing, tandem gait, and squatting. He had frequent limitations in climbing ramps/stairs; occasional limitation climbing ladders, ropes, or scaffolds; and frequent limitation in balancing, stooping, kneeling, crouching, and crawling. The examiner noted that the restrictions were due to radiculopathy with hypesthesias and mild weakness in the lower extremities. An April 2008 VA treatment record states that the Veteran "[c]ontinues to have some left leg radiculopathy."

A June 2008 VA magnetic resonance imaging (MRI) report states that the Veteran had DDD with annular tears, and, at L5-S1, "mild to moderate bilateral foraminal stenosis secondary to hypertrophic facet arthropathy, disc bulge, and endplate osteophytic spurring." A September 2008 VA treatment record states a diagnosis of chronic back pain with radicular symptoms to both legs and disc and facet degeneration. On his October 2008 VA Form 9, the Veteran wrote that he could no longer hunt, fish, play ball, or participate in sports due to his low back disorder. October 2008 VA treatment records state that the Veteran had low back pain with an associated symptom of pain radiating into both legs and that he received a steroid injection in his back. A December 2008 VA treatment record states that the October 2008 steroid injection provided no pain relief and that the Veteran had left gluteal pain that traveled down the back of his leg to the calf.

In November 2009, the Veteran was afforded a VA general medicine examination. He reported daily moderate to severe back pain with bilateral leg pain at night. He also reported intermittent stiffness and spasms. His back symptoms were made worse by cold weather and prolonged walking or sitting; he had flare-ups when lying down. He stated that the flare-ups were weekly, lasted for hours, and were severe in nature. He could not stand for more than 10 to 15 minutes or walk more than 100 yards. The examiner noted that the Veteran had an antalgic gait. On active motion, he had flexion to 75 degrees, extension to 15 degrees, left lateral flexion to 20 degrees, and left lateral rotation to 20 degrees. Right lateral flexion and rotation measurements were not legible on the examination report. There was pain on active range of motion. He had pain following repeated use, but no additional limitation of motion. The examiner noted that the Veteran's back disorder moderately affected his ability to do chores, severely affected his ability to exercise, and mildly affected his ability to travel. 

A January 2010 VA treatment record states that the Veteran had pain in his back that radiated to both feet, with the right being worse than the left. He had weakness in his legs, spasms, and paresthesias. Another January 2010 VA treatment record indicates that the Veteran did not have any bowel or bladder symptoms resulting from his back disorder. In February 2010, the Veteran underwent nerve conduction and electromyography (EMG) testing in his lower extremities. He had fibrillation in the right tensor fasciae latae muscle, but his right lower extremity was otherwise normal. EMG testing could not be completed in the left lower extremity due to the Veteran's inability to tolerate the procedure. The clinician stated, "[n]o definitive evidence of radiculopathy, pain likely due to spondylosis." A February 2011 VA letter states that the Veteran underwent an MRI which showed "[d]egenerative changes at L4-L5 and L5-S1 resulting in canal narrowing at L4-L5 and bilateral neural foramina narrowing at L5-S1 and L4-L5." The letter stated that the Veteran should continue taking his prescribed medication.

At the Veteran's April 2011 Board hearing he reported taking hydrocodone three times per day, morphine three times per day, and a muscle relaxer four times per day. He reported that he had previously tried physical therapy but it did not relieve his symptoms. He stated that he could walk approximately 100 to 150 yards and, when sitting, was constantly moving to try to relieve pain and pressure in his low back and legs. He stated that he could not stand in any position for more than 2 to 3 minutes and, after 10 to 15 minutes of standing, had to sit or lie down. The Veteran reported that his back disorder prevented him from traveling and sometimes from getting out of bed. He reported difficulty sleeping due to pain and discomfort.

On October 5, 2011, the Veteran was afforded a VA back examination. The stated diagnosis was degenerative lumbar spine. The Veteran reported daily, constant, severe back pain, which was worsened with bending, lifting, and prolonged sitting. He stated that every 2 to 3 days his back flared-up preventing nearly all activity. On examination, he had forward flexion limited to 55 degrees, extension limited to 15 degrees, right lateral flexion limited to 15 degrees, left lateral flexion limited to 15 degrees, right lateral rotation limited to 20 degrees, and left lateral rotation limited to 20 degrees. He had pain throughout the entire range of motion for each motion. The examiner noted that the Veteran had additional limitation in range of motion following repeated use testing and that he had functional loss and/or functional impairment resulting in less movement than normal, excess fatigability, pain on movement, disturbance of locomotion, and interference with sitting, standing, and/or weight-bearing. He had pain with palpation of the paraspinal muscles, normal muscle strength, no muscle atrophy, normal reflexes, was normal on sensory testing, had no symptoms of radiculopathy, and had no other neurologic abnormalities. The examiner indicated that the Veteran had IVDS with incapacitating episodes of at least 6 weeks duration over the prior 12 months. The examiner noted that imaging studies indicated that the Veteran had arthritis.

In a November 2011 statement, the Veteran wrote that his back pain caused sleepless nights, prevented him from keeping a schedule because he never knew when his symptoms would worsen, prevented him from playing ball with his grandkids, and prevented him from being able to enjoy life. In a March 2012 Function Report for SSA benefits, the Veteran wrote that he spent most of his days in bed, on the couch, or in a recliner chair. He stated that his back disorder prevented participation in hobbies he enjoyed, such as working on cars, hunting, fishing, riding horses, or riding motorcycles. He reported difficulty sleeping due to pain, and difficulty dressing, tying shoes, and bathing due to an inability to bend. He reported that he used to enjoy cooking but could no longer do it and instead prepared only quick meals. He was able to do light cleaning and laundry 1 to 2 times per week for about 10 minutes. He was able to drive and grocery shop approximately 1 time per week. He reported limitations in lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, completing tasks, concentration, and getting along with others. He could walk approximately 100 to 150 feet before needing to rest, could not lift more than 5 pounds, and could not stand, sit, or kneel for more than 5 to 10 minutes.

In June 2013, the Veteran was afforded a VA peripheral nerves examination. He had mild constant pain in both lower extremities, no intermittent pain, no paresthesias and/or dysesthesias, and no numbness. Lower extremity nerve testing was normal, reflexes were normal, sensory tests were normal, and the Veteran's gait was normal. All lower extremity nerve testing was normal. The examiner stated that there was no objective evidence of radiculopathy on examination.

In June 2013, the Veteran was also afforded a VA back examination. The stated diagnosis was DDD of the lumbar spine. He had flexion to 70 degrees with pain, extension to 25 degrees with pain, right lateral flexion to 25 degrees with pain, left lateral flexion to 25 degrees with pain, right lateral rotation to 25 degrees with pain, and left lateral rotation to 20 degrees with pain. He did not have additional loss of range of motion following repeated use testing. The examiner noted that the Veteran did have functional loss and/or functional impairment resulting in weakened movement, pain on movement, and interference with sitting, standing, and/or weight-bearing. He did not have pain on palpation, guarding, or muscle spasms. His gait was normal. Muscle strength testing was normal, there was no muscle atrophy, reflexes were normal, sensory testing was normal, and the Veteran did not have any symptoms of radiculopathy or other neurologic abnormalities. The examiner stated that the Veteran had IVDS but no incapacitating episodes in the prior 12 months.

In August 2017, the veteran was afforded VA back and peripheral nerves examinations. Diagnoses of IVDS and DDD were stated. The Veteran reported chronic, severe, daily back pain radiating down the left leg and some symptoms in the right leg. He reported flare-ups 6 to 8 times in the previous year where he felt like his back locked up and he could not stand up straight. During the flare-ups, he would lie in his recliner chair until his back improved because he could not lay flat. These flare-ups lasted from 3 to 7 days. He was unable to do any lifting, to mow his lawn, to stand or walk for long periods of time, or to ride his motorcycle. On examination, he had forward flexion to 60 degrees, extension to 10 degrees, right lateral flexion to 15 degrees, left lateral flexion to 15 degrees, right lateral rotation to 10 degrees, and left lateral rotation to 15 degrees. He had pain during range of motion testing but it did not result in any functional loss. The examiner also noted that there was pain on passive range of motion testing but that it did not result in any functional loss and that there was no pain during non-weight-bearing testing. There was no pain on palpation and no additional loss of function or range of motion following repeated use testing. The examiner indicated that pain, weakness, fatigability, or incoordination significantly limited the Veteran's functional ability with repeated use over time and with flare-ups. He had an antalgic gait, but no guarding or muscle spasms. Muscle strength testing was normal and he had no muscle atrophy. He had decreased reflexes in both ankles and knees. Sensory testing was normal except for decreased sensation in the left foot/toes, and the left straight leg raising test was positive. The examiner noted that the Veteran had moderate left lower extremity radiculopathy and no right lower extremity radiculopathy. He had no intermittent pain, had moderate left lower extremity paresthesias and/or dysesthesias, and had moderate left lower extremity numbness. The examiner stated that the Veteran had moderate incomplete paralysis of the left sciatic nerve. He had no ankylosis of the spine and no other neurologic abnormalities resulting from the back disorder. The examiner indicated that the Veteran had IVDS but no incapacitating episodes in the prior 12 months.

In an August 2017 VA examination report addendum, the examiner noted that the range of motion test results reported in the August 2017 examination report were on active motion and on weight-bearing. On passive range of motion, he had forward flexion to 30 degrees, extension to 5 degrees, right lateral flexion to 10 degrees, left lateral flexion to 10 degrees, right lateral rotation to 10 degrees, and left lateral rotation to 15 degrees. On non-weight bearing testing, the Veteran had forward flexion to 60 degrees, extension to 20 degrees, right lateral flexion to 10 degrees, left lateral flexion to 15 degrees, right lateral rotation to 10 degrees, and left lateral rotation to 15 degrees. The examiner indicated that she reviewed prior examination reports and she suspected that active, passive, weight-bearing, and non-weight-bearing ranges of motion would be similar to what was reported at the times of those examinations. She also noted that the Veteran's IVDS resulted in no incapacitating episodes at any time. She stated that, although the October 2011 examiner reported incapacitating episodes, there was no evidence of acute symptoms that required bed rest as prescribed by a physician and that the Veteran confirmed this during her examination with him. She wrote that he stated that, at the time of the October 2011 examination, he was referring to flare-ups but that there were no interventions prescribed by a physician and, instead, something he did on his own.

October 2017 VA treatment records state that the Veteran had low back pain which radiated into his right lower extremity and that he had weakness in the right lower extremity.

For the period from May 2, 2006 through October 4, 2011, the Veteran's back disorder caused DDD; spondylosis; stenosis; arthritis; bilateral lower extremity radiculopathy; an abnormal, unsafe gait; severe pain which radiated into both lower extremities; hypoesthesia, paresthesias, and decreased strength in both lower extremities; decreased muscle strength in the hips; abnormal plantar reflexes; difficulty walking, standing, sitting, sleeping, climbing, balancing, stooping, kneeling, crouching, and crawling; fatigue, decreased motion, stiffness, weakness, spasms, guarding, and tenderness; flare-ups; prevented participation in hunting, fishing, and playing sports; required several pain medications and muscle relaxers, as well as steroid injections; impacted his ability to complete chores, shop, travel, feed himself, and dress himself; and resulted in flexion to 75 degrees, extension to 15 degrees, right lateral flexion to 25 degrees, left lateral flexion to 20 degrees, right lateral rotation to 35 degrees, and left lateral rotation to 20 degrees, with pain throughout the entire range of motion for each motion. He had no ankylosis and no other neurologic abnormalities resulting from the back disorder. Given these facts, the Board finds that from May 2, 2006, through October 4, 2011, the Veteran's low back disorder symptoms most closely approximate a 20 percent rating due to spasms, guarding, and an abnormal gait, and a 10 percent rating for mild left lower extremity radiculopathy. 38 C.F.R. § 4.7. See Hart v. Mansfield, 21 Vet. App. 505 (2007). 

A separate compensable rating is also warranted for mild right lower extremity radiculopathy as medical records are in equipoise as to whether the Veteran had radiculopathy in both of his lower extremities. 38 C.F.R. § 4.71a, Diagnostic Code 5237, Note 1. In making these determinations, the Board has considered, along with the schedular criteria, the Veteran's functional loss due to pain. 38 C.F.R. §§ 4.40, 4.45 (2017); DeLuca v. Brown, 8 Vet. App. 202, 206-207 (1995). 

For the period from May 2, 2006 through October 4, 2011, a 40 percent rating for the back disorder is not warranted as the Veteran had forward flexion in excess of 30 degrees and did not have any ankylosis. A 20 percent rating is not warranted for the right and left lower extremity radiculopathy because the symptoms are not moderate, in that they are described as mild and are only detectable during some periods of treatment and on some examinations; at other times, no radiculopathy is reported.

For the period beginning on October 5, 2011, the Veteran's back disorder caused DDD; IVDS; arthritis; daily, constant, severe back pain; mild constant pain in both lower extremities; moderate left lower extremity paresthesias and/or dysesthesias; moderate left lower extremity numbness; moderate incomplete paralysis of the left sciatic nerve; right lower extremity weakness; an antalgic gait; decreased reflexes in both ankles and knees; decreased sensation in the left foot/toes; positive left straight leg raising test; difficulty bending, lifting, sitting, standing, weight-bearing, squatting, reaching, walking, kneeling, climbing stairs, sleeping, dressing himself, and cooking; flare-ups, excess fatigability, decreased range of motion after repeated use, functional impairment resulting in less movement than normal, and disturbance of locomotion; pain on palpation; prevented him from keeping a schedule due to unexpected symptoms, from playing ball with his grandkids, from being able to enjoy life, and from participating in hobbies he once enjoyed, including working on cars, hunting, fishing, riding horses, and riding motorcycles; and forward flexion limited to 30 degrees with pain, extension limited to 5 degrees with pain, right lateral flexion limited to 10 degrees with pain, left lateral flexion limited to 10 degrees with pain, right lateral rotation limited to 10 degrees with pain, and left lateral rotation limited to 15 degrees with pain. He had no ankylosis and no other neurologic symptoms associated with his low back disorder. Given these facts, the Board finds that since October 5, 2011, the Veteran's low back disorder symptoms most closely approximate a 40 percent rating due to forward flexion of 30 degrees or less, a 10 percent rating for right lower extremity radiculopathy, and a 20 percent rating for left lower extremity radiculopathy. 38 C.F.R. § 4.7. See Hart, 21 Vet. App. at 505. In making these determinations, the Board has again considered, along with the schedular criteria, the Veteran's functional loss due to pain. 38 C.F.R. §§ 4.40, 4.45; DeLuca, 8 Vet. App. at 206-207. A higher rating is not warranted for the back disorder because the Veteran does not have ankylosis. 

For the period beginning on October 5, 2011, a 20 percent rating is not warranted for the right lower extremity radiculopathy because the symptoms are undetectable on some VA examinations. A 40 percent rating is not warranted for left lower extremity radiculopathy because the August 2017 VA examination stated that the Veteran's symptoms are moderate, not moderately severe.

The Board notes that the Veteran would be entitled to a 60 percent rating for his back disorder based on the October 2011 VA examination report that stated that his IVDS caused incapacitating episodes of at least 6 weeks duration during the prior year. However, the August 2017 VA addendum opinion clarified that the October 2011 indication of incapacitating episodes was in error. The Veteran reported at his August 2017 examination that he was never prescribed bed rest by a physician. The examiner stated that, during flare-ups, the Veteran would himself take steps to relieve his symptoms but was never prescribed bed rest. Therefore, the Board finds that October 2011 examination report stating that the Veteran had incapacitating episodes was in error and a higher rating would not be warranted under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes as the Veteran has never had any incapacitating episodes as defined by 38 C.F.R. § 4.71a, Diagnostic Code 5243, Note 1.

The Board has considered whether further staged ratings under Fenderson, supra, are appropriate for the Veteran's service-connected mechanical low pain, right lower extremity radiculopathy, and left lower extremity radiculopathy; however, the Board finds that his symptomatology has been stable throughout each appeal period. Therefore, assigning further staged ratings for each such disability is not warranted. 

In assessing the severity of the disabilities under consideration, the Board has considered the Veteran's assertions regarding his symptoms as well as his representative's observations regarding his symptoms, which each is certainly competent to provide. See, e.g., Layno v. Brown, 6 Vet. App. 465, 470 (1994) and Grottveit v. Brown, 5 Vet. App. 91, 93 (1993). However, the criteria needed to support higher ratings require medical findings that are within the province of trained medical professionals. See Jones v. Brown, 7 Vet. App. 134, 137-138 (1994). As such, the lay assertions are not considered more persuasive than the objective medical findings which, as indicated above, do not support assignment of an increased rating for mechanical low back pain, right lower extremity radiculopathy, and left lower extremity radiculopathy pursuant to any applicable criteria at any point pertinent to this appeal. 

B. TDIU

VA regulations allow for the assignment of TDIU when a veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, and the veteran has certain combinations of ratings for service-connected disabilities. If there is only one such disability, that disability must be ratable at 60 percent or more. If there are two or more disabilities, there must be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a). Even if service-connected disabilities fail to meet the percentage standards set forth in 38 C.F.R. § 4.16(a), referral to the Director of the VA Compensation and Pension Service for extra-schedular consideration of a TDIU is warranted if the veteran nonetheless is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. 38 C.F.R. § 4.16(b).

At his September 2017 VA examinations, the Veteran reported that he was "still able to work in remodeling, but [that] he pretty much tells people what to do." The examiner stated that the Veteran "is currently employed in remodeling/carpentry, but [his disorders] impair[] lifting, prolonged standing, or walking." As the Veteran is currently working and there is no allegation or indication that this employment is not gainful, he is able to secure and follow a substantially gainful occupation. Therefore, a TDIU is not warranted.

The Veteran has not raised any other issues, nor have any other issues been reasonably raised by the record. See Doucette v. Shulkin, 28 Vet. App. 366 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record). 


ORDER

From May 2, 2006 through October 4, 2011, a 20 percent rating for mechanical low back pain is granted.

Beginning on October 5, 2011, a 40 percent rating for mechanical low back is granted.

From May 2, 2006 through November 14, 2006, a 10 percent rating for left sciatic nerve is granted.

From October 5, 2011 to August 24, 2017, a rating of 20 percent for left sciatic nerve is granted.

A rating in excess of 20 percent for left sciatic nerve since August 25, 2017 is denied. 





 CONTINUE ON THE NEXT PAGE


Beginning on May 2, 2006, a separate 10 percent rating for right lower extremity radiculopathy is granted.

TDIU is denied.



______________________________________________
K. OSBORNE
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs