Citation Nr: 1206476 
Decision Date: 02/22/12 Archive Date: 03/01/12

DOCKET NO. 08-31 193 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Buffalo, New York


THE ISSUES

1. Entitlement to an initial compensable evaluation for bilateral heel spurs. 

2. Entitlement to an initial compensable evaluation for a scar, abdomen.


REPRESENTATION

Veteran represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

L. J. N. Driever



INTRODUCTION

The Veteran had active service from April 2003 to April 2007. 

These claims come before the Board of Veterans' Appeals (Board) on appeal of a January 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Buffalo, New York. 

During the course of this appeal, by written statement received at the RO in April 2008, the Veteran also initiated an appeal of the RO's January 2008 rating decision granting service connection for a lumbar spine strain and assigning that disability a zero percent evaluation. In January 2009, in response, the RO issued a statement of the case. Thereafter, however, the Veteran did not perfect his appeal on this claim by submitting a VA Form 9 (Appeal to Board of Veterans' Appeals) or any other document that may be construed as a substantive appeal on the claim. The issue of whether a higher initial evaluation may be assigned the lumbar spine strain is thus not now before the Board for appellate review. 

The Board REMANDS the claims now on appeal to the RO via the Appeals Management Center in Washington, D.C. 


REMAND

Prior to adjudicating the claims on appeal, additional development is needed. See 38 C.F.R. § 19.9 (2011).
 
First, the RO has certified for appeal the two claims noted on the first page of this decision. A review of the claims file reflects, however, that the Veteran might not have perfected his appeal on the claim of entitlement to an initial compensable evaluation for a scar, abdomen. By rating decision dated January 2008, the RO, in pertinent part, granted the Veteran service connection for bilateral heel spurs and a scar on the abdomen. Thereafter, in a written statement received at the RO in April 2008, the Veteran expressed disagreement with the initial zero percent evaluations the RO assigned his disabilities. In response, in July 2008, the RO issued a statement of the case listing the two claims on appeal. Thereafter, the Veteran did not file a VA Form 9 (Appeal to Board of Veterans Appeals). He did, however, file a VA Form 21-4138 (Statement In Support Of Claim), which indicated that "[He] would like a claim for an increase for [his] bilateral heel spur due to podiatry recommendation for surgery." The RO accepted this statement in lieu of a VA Form 9 on the claims of entitlement to compensable evaluations for bilateral heel spurs and a scar on the abdomen and proceeded to consider these claims as properly perfected for appellate review. 

Given the foregoing and to protect the Veteran's due process of law, a remand is necessary so that the RO can make a formal determination as to whether the Veteran filed a timely and adequate appeal on the claim of entitlement to an initial compensable evaluation for a scar on the abdomen. The Veteran can then decide whether to appeal the RO's determination in this regard. 

Second, under 38 U.S.C.A. § 5103A (West 2002), VA's duty to assist includes providing a claimant a medical examination or obtaining a medical opinion when an examination or opinion is necessary to make a decision on a claim. In this case, an examination of the Veteran's feet is necessary. During the course of this appeal, in December 2007 and October 2008, the RO afforded the Veteran VA general medical and feet examinations, but, for the reasons that follow, the reports of these examinations are inadequate to decide the claim for a higher initial evaluation for a bilateral foot disability. 

When the RO granted the Veteran service connection for bilateral heel spurs by rating decision dated January 2008 it did so based on service treatment records showing bilateral foot pain and a report of VA examination that included a diagnosis of bilateral heel spurs. The VA examiner was not privy to the claims file when he rendered this diagnosis. He thus based his diagnosis on the Veteran's reported medical history of having been diagnosed with bilateral heel spurs during service, clinical findings of tenderness on palpation of the feet and a callus over the heels and x-rays showing minor degenerative changes of the great toe on the right and minimal narrowing of the first MP joint on the left. Based on these findings, the RO assigned the Veteran a zero percent evaluation pursuant to Diagnostic Code (DC) 5021 (myositis), by analogy. See 38 C.F.R. §§ 4.20, 4.71, DC 5021 (2011). 

Since then, x-rays have not confirmed heel spurs and it has become apparent that the Veteran has multiple problems with both of his feet, including the previously noted degenerative changes, bilateral pes planus deformities and a haglands deformity. The reports of VA examination do not provide guidance as to whether all such problems are related to service and should be considered part of the Veteran's service-connected bilateral foot disability. Such guidance is crucial because if all of the problems are ratable as part of the service-connected bilateral foot disability, the pes planus, depending upon its severity, might entitle the Veteran to a higher initial evaluation under DC 5276 and the other problems might entitle him to a higher initial evaluation under a different DC. 

Since the December 2007 VA examination, it has also become apparent that the Veteran's foot symptoms, however diagnosed, are worsening. In October 2008, a podiatrist noted that the Veteran's calluses necessitated serial debridement and ordered special shoes for the Veteran. Several days later, the Veteran filed a statement indicating that his podiatrist had recommended surgery. During his October 2008 VA examination, the Veteran reported chronic foot pain, increased during flare-ups, which a VA objectively confirmed. He also reported that this pain caused functional limitations at work, particularly with regard to endurance, an assertion to which the VA examiner did not respond. A discussion in this regard is necessary. 

VA's review of a service-connected musculoskeletal disability must include an assessment of the functional impairment caused by that disability and if the service-connected disability involves a joint rated based on limitation of motion, adequate consideration must be given to functional loss due to pain under 38 C.F.R. § 4.40, and functional loss due to weakness, fatigability, incoordination or pain on movement of a joint under 38 C.F.R. § 4.45. DeLuca v. Brown, 8 Vet. App. 202, 206-7 (1995). Pain must affect some aspect of the normal working movements of the body such as excursion, strength, speed, coordination and endurance to constitute functional loss. Mitchell v. Shinseki, No. 09-2169 (Vet. App. Aug. 23, 2011). Although pain may cause functional loss, pain, itself, does not constitute functional loss and is just one factor to be considered when evaluating functional impairment. Id. 

This claim is remanded to the RO for the following development: 

1. Make a formal written determination regarding whether the Veteran filed a timely and adequate appeal on the claim of entitlement to an initial compensable evaluation for a scar on the abdomen. Notify the Veteran and his representative of any unfavorable determination and provide them an opportunity to respond, including by perfecting an appeal of the determination. 

2. Arrange for the Veteran to undergo a VA examination in support of his claim for an initial compensable evaluation for bilateral heel spurs. Forward the claims file to the examiner for review of all pertinent documents therein and ask the examiner to confirm in his written report that he undertook such a review. Ask the examiner to conduct a thorough evaluation, including all indicated tests, and then proceed as follows: 

a) diagnose all left and right foot disabilities and abnormalities shown to exist, including, if appropriate, heel spurs, degenerative joint disease, pes planus, a haglands deformity, weight-bearing line over or medial to the great toe, inward bowing of the tendo achillis, callosities, pronation and abduction; 

b) identify each disability/abnormality that is part of the Veteran's service-connected bilateral foot disorder or otherwise related to his service;

c) note all symptoms associated with the Veteran's service-connected left and right foot disabilities/abnormalities, including, if appropriate, limitation of motion, painful motion, pain on manipulation and/or use, swelling on use;

d) characterize any pes planus as mild, manifested by symptoms relieved by built-up shoes or arch supports, moderate, severe or pronounced;

e) inquire as to whether the Veteran has flare-ups of his foot symptoms;

f) objectively confirm any functional loss caused by the Veteran's foot symptoms, including during flare-ups and on repetitive use; 

g) when considering whether there is functional loss due to weakness, fatigability, incoordination, pain, including on movement of a joint, reduced or excessive excursion, decreased strength, speed, or endurance, or the absence of necessary structures, deformity, adhesion, and/or defective innervation, describe the extent of this loss during flare-ups or after repetitive use in terms of additional loss of motion beyond that which is observed clinically; 

h) describe the impact of the Veteran's left and right foot symptoms on his daily activities and employability, including during flare-ups and on repetitive use; 

i) specifically opine whether the Veteran's left and right foot symptoms markedly interfere with his employability, or in conjunction with his other service-connected disabilities, render him unable to secure and/or follow substantially gainful employment; 

j) provide detailed rationale, with specific references to the record, for the opinions provided; and 

k) if an opinion cannot be provided without resort to speculation, discuss why such is the case and whether there is additional evidence that would aid in providing such opinion.

3. Review the examination report to ensure that it complies with these remand instructions and, if not, return it to the examiner for correction. 

4. Readjudicate all claims properly perfected for appellate review. If any benefit sought on appeal is not granted to the Veteran's satisfaction, issue a supplemental statement of the case. Return the case to the Board for further appellate review if otherwise in order.

The Board intimates no opinion as to the outcome in this case, but reminds the Veteran that he has a right to submit additional evidence and argument on the remanded claims. Kutscherousky v. West, 12 Vet. App. 369, 372 (1999).

These claims must be afforded expeditious treatment. 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2010).


_________________________________________________
CHERYL MASON
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2002), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2011).