Citation Nr: 1811317 
Decision Date: 02/23/18 Archive Date: 03/06/18

DOCKET NO. 14-16 707 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Juan, the Commonwealth of Puerto Rico


THE ISSUES

1. Entitlement to an initial rating in excess of 10 percent prior to March 14, 2016, and in excess of 20 percent thereafter, for service-connected left plantar fasciitis.

2. Entitlement to an initial rating in excess of 10 percent prior to March 14, 2016, and in excess of 20 percent thereafter, for service-connected right plantar fasciitis.

3. Entitlement to an initial rating in excess of 10 percent for service-connected left Achilles tendinitis.


REPRESENTATION

Appellant represented by: Disabled American Veterans




ATTORNEY FOR THE BOARD

James R. Springer, Associate Counsel


INTRODUCTION

The Veteran served on active duty from October 1998 to April 2000.

These matters come before the Board of Veterans' Appeals (Board) on appeal from an April 2012 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in San Juan, the Commonwealth of Puerto Rico.

The Board remanded the appeal for further development in December 2015.

In an April 2016 rating decision, the agency of original jurisdiction (AOJ) increased the Veteran's disability rating for his right plantar fasciitis and left plantar fasciitis to 20 percent, effective March 14, 2016. Where there is no clearly expressed intent to limit the appeal to entitlement to a specified disability rating, the AOJ and Board are required to consider entitlement to all available ratings for that condition. See AB v. Brown, 6 Vet. App. 35, 39 (1993). Thus, these issues remain on appeal.

The appeal is REMANDED to the AOJ. VA will notify the appellant if further action is required.


REMAND

The Board notes at the outset that there may be outstanding VA treatment records which contain information relevant to the Veteran's claims for higher ratings. The March 2014 statement of the case noted that VA treatment records from the San Juan VA Medical Center (VAMC) dated through April 16, 2012, had been reviewed in connection with the Veteran's claims. In August 2014, however, the Veteran submitted a July 2014 VA treatment record from the San Juan VAMC in support of his claim. To ensure that there is an adequate record upon which to decide the Veteran's claims, a remand is necessary to obtain any VA treatment records dated since April 16, 2012. Bell v. Derwinski, 2 Vet. App. 611 (1992). Additionally, he should be provided the opportunity to identify any additional private treatment records that are relevant to his claims, and to provide the necessary information in order for the VA to assist him in obtaining these potentially relevant records. See 38 C.F.R. § 3.159(c) (2017). 

In accordance with the Board's December 2015 remand, the Veteran was afforded VA examinations to address the nature and severity of his service-connected left Achilles tendinitis and bilateral plantar fasciitis in March 2016. With regard to the Veteran's left Achilles tendinitis, he reported flare-ups on a weekly basis which lasted hours. As to whether pain, weakness, fatigability, or incoordination significantly limited the Veteran's functional ability, the examiner stated that he was unable to say without mere speculation. The examiner noted that pain could limit functional ability during a flare-up; however, there was no evidence of weakness, fatigability, or incoordination at the time of the examination. As to the extent of any additional loss of range of motion during a flare-up, the examiner indicated that he could not say because the Veteran was not experiencing a flare-up at the time of the examination.

With regard to the Veteran's bilateral plantar fasciitis, the Veteran reported a loss of standing and ambulation tolerance during flare-ups. The examiner noted that pain, weakness, fatigability, or incoordination significantly limited the Veteran's functional ability during flare-ups or following repetitive use; however, the examiner failed to provide a description of that functional loss.

In a case issued after the March 2016 VA examination, the United States Court of Appeals for Veterans Claims (Court) noted that "the VA Clinician's Guide makes explicit what DeLuca [v. Brown, 8 Vet.App. 202 (1995)] clearly implied: it instructs examiners when evaluating certain musculoskeletal conditions to obtain information about the severity, frequency, duration, precipitating and alleviating factors, and extent of functional impairment of flares from the veterans themselves" and that, even when the claimant is not experiencing a flare-up at the time of the examination, a VA examiner must elicit relevant information as to the veteran's flares or ask him or her to describe the additional functional loss, if any, he or she suffered during flares and then estimate the veteran's functional loss due to flares based on all the evidence of record-including the veteran's lay information-or explain why he could not do so. Sharp v. Shulkin, 29 Vet. App. 26, 34-35 (2017). 

Given the foregoing, and to comply with the Court's holding in Sharp, supra, the Board finds that the Veteran should once again be scheduled for a new VA examination. See Barr v. Nicholson, 21 Vet. App. 303 (2007). Furthermore, given that his initial rating claim stems from April 28, 2000, the day after he was discharged from service, the examiner should provide a retrospective opinion as the nature and severity of the Veteran's service-connected bilateral plantar fasciitis and left Achilles tendinitis since that date in accordance with the appropriate diagnostic codes.

Accordingly, the case is REMANDED for the following action:

1. Associate with the claims file all of VA treatment records relating to the Veteran's claimed disabilities dated since April 16, 2012.

2. Give the Veteran an opportunity to identify any outstanding pertinent evidence that has not already been associated with the claims file. The AOJ should then attempt to obtain those records if the appropriate authorization is provided.

3. If any records cannot be obtained after reasonable efforts have been made, issue a formal determination that such records do not exist or that further efforts to obtain such records would futile, which should be documented in the claims file. The Veteran must be notified of the attempts made and why further attempts would be futile, and allowed the opportunity to provide such records, as provided in 38 U.S.C. § 5103A(b)(2) and 38 C.F.R. § 3.159(e).

4. After obtaining all outstanding records, the Veteran should be scheduled for an appropriate VA examination to determine the current nature and severity of his service-connected left Achilles tendinitis and bilateral plantar fasciitis. The entire record should be made available to and be reviewed by the examiner. Any indicated evaluations, studies, and tests should be conducted.

The examiner should address each of the following inquiries:

(a) The examiner should describe all symptoms associated with the Veteran's service-connected left Achilles tendinitis and bilateral plantar fasciitis since April 28, 2000.

(b) The examiner should conduct range of motion testing (expressed in degrees) in active motion, passive motion, weight-bearing, and nonweight-bearing. If pain is noted on range-of-motion testing, the examiner should specify at what point the Veteran's loss of range of motion was due to pain and at what point the evidence of pain ended.

(c) With regard to the Veteran's service-connected left Achilles tendinitis, the examiner should indicate whether it results in moderate or marked limited motion. 

(d) With regard to the Veteran's service-connected right and left fasciitis, the examiner should indicate whether each results in a moderate, moderate-severe, or severe disability.

In providing answers to questions (c) and (d) , the examiner should render a retrospective opinion regarding the severity of the Veteran's left Achilles tendinitis and right and left fasciitis since April 28, 2000, the day after he was discharged from service. Specifically, the examiner should indicate whether there has been any change(s) in severity and, if so, the examiner should identify the approximate date of the change(s) and provide an assessment of the severity.

(e) The examiner should also render specific findings as to the additional limitation of motion due to pain on motion, weakness, excess fatigability, or incoordination, as well as any additional functional effects, since April 28, 2000. If feasible, this determination should be expressed in terms of the degree of additional range of motion lost. 

(f) The examiner should ask the Veteran to report any range of motion loss during flare-ups or following repeated use, since April 28, 2000. Record his reports and opine whether the reports are consistent with the disability found on the examination. Even if the Veteran is not experiencing a flare-up at the time of the examination, the examiner should elicit relevant information as to flare ups and ask him to describe the additional functional loss, if any, he suffers during flare-ups or following repeated use. 

The examiner should then estimate the functional loss, including loss of range of motion, due to flare-ups or following repeated use based on all the evidence of record-including the Veteran's lay statements. If the examiner cannot provide the above-requested opinion without resorting to speculation, he or she should state whether all procurable medical evidence had been considered, to specifically include the Veteran's description as to the severity, frequency, duration of the flare-ups and his description as to the extent of functional loss during a flare-up and after repetitive use over time; whether the inability is due to the limits of medical community or the limits of the examiner's medical knowledge; and whether there is additional evidence, which if obtained, would permit the opinion to be provided. See Sharp v. Shulkin, 29 Vet. App. 26, 33 (2017).

In addressing such inquiries, the examiner should take into consideration all of the evidence of record, to include medical records as well as the Veteran's lay statements, accepted medical principles and objective medical findings.

All examination findings/testing results, along with a complete, clearly-stated rationale for any opinion offered, should be provided.

5. Thereafter, and after any further development deemed necessary, the appeal should be reajudicated based on all evidence of record since April 28, 2000. If the benefits sought on appeal are not granted, the Veteran should be provided with a Supplemental Statement of the Case and afforded the appropriate opportunity to respond. Thereafter, the case should be returned to the Board for further appellate consideration, if otherwise in order.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the Court for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).



_________________________________________________
M. E. KILCOYNE
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C. § 7252 (2012), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2017).