﻿Citation Nr: 18124203
Decision Date: 08/07/18 Archive Date: 08/06/18

DOCKET NO. 16-60 656
DATE: August 7, 2018
ORDER
Entitlement to an increased rating of 30 percent, but no greater, for service-connected right patellar well healed old fracture with posttraumatic degenerative joint disease of the right knee is granted.
Entitlement to an increased rating of 20 percent, but not greater, for service-connected left patellofemoral syndrome is granted.
Entitlement to an increased rating greater than 50 percent for service-connected anxiety disorder, NOS is denied.
Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) is granted.
FINDINGS OF FACT
1. Considering the impact of pain, weakness, fatigability, and flare-ups, the service-connected right patellar well healed old fracture with posttraumatic degenerative joint disease manifested as extension limited to 20 degrees.
2. Considering the impact of pain, weakness, fatigability, and flare-ups, the service-connected left patellofemoral pain syndrome manifested as extension limited to 15 degrees.
3. Throughout the period on appeal, the service-connected anxiety disorder, NOS manifested as occupational and social impairment with reduced reliability and productivity due symptoms such as depressed mood, anxiety, flattened affect, panic attack weekly or less often, chronic sleep impairment, mild memory loss, disturbances of motivation or mood, and difficulty adapting to stressful circumstances including work or a work-like environment.
4. The service-connected disabilities, when evaluated in association with educational attainment and occupational experience, preclude all forms of employment.
CONCLUSIONS OF LAW
1. For the entire period, the criteria for an increased rating of 30 percent, but no greater, for service-connected right patellar well healed old fracture with posttraumatic degenerative joint disease of the right knee have been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.1, 4.3, 4.7, 4.14, 4.27, 4.40, 4.45, 4.59, 4.71(a), Diagnostic Code 5261 (2017).
2. For the entire period on appeal, the criteria for an increased rating of 20 percent, but no greater, for service-connected left patellofemoral syndrome have been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.1, 4.3, 4.7, 4.14, 4.27, 4.40, 4.45, 4.59, 4.71(a), Diagnostic Code 5261 (2017).
3. For the entire period on appeal, the criteria for an increased rating greater than 50 percent for service-connected anxiety disorder, NOS have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.7, 4.10, 4.21, 4.126, 4.130, Diagnostic Code 9413 (2017).
4. The criteria for entitlement to a TDIU have been met. 38 U.S.C. §§ 1155, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.159, 3.321, 3.340, 3.341, 4.1, 4.15, 4.16, 4.18 (2017).
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The appellant served on active duty from September 1979 through September 1983 and from July 1984 through February 1989 with subsequent service in the United States Army Reserves with periods of active duty for training until discharged in February 1992.
The Board remanded the above-listed issues in December 2015. The requested development has been completed to the extent possible and the matter is before the Board for further appellate review. See Stegall v. West, 11 Vet App. 268 (1998).
Entitlement to an increased rating greater than 20 percent for service-connected right patellar well healed old fracture with posttraumatic degenerative joint disease of the right knee
The Veteran contends that the constant pain and swelling caused by his service-connected right knee disability warrants an increased rating greater than 20 percent. The Veteran’s service-connected right patellar well healed fracture with post traumatic degenerative joint disease of the right knee is rated as 20 percent disabling under Diagnostic Code 5099-5010-5261, applying to traumatic arthritis, which is rated based on limitation of motion of the affected parts.
The Veteran was afforded a VA examination in January 2015 to evaluate the severity of the right knee disability. He reported experiencing constant ain and recurrent swelling. He denied any locking or giving way. The Veteran reported experiencing flare-ups that impacted the ability to stand for more than 10 minutes. Physical examination in January 2015 reflected flexion to 110 degrees and extension to 15 degrees. The Veteran experienced pain with flexion, which the examiner noted caused functional loss, and was unable to squat or kneel. Repetitive use testing was not performed due to severe pain. The examiner noted the Veteran’s flare ups occurred four to five days a week, were severe, and lasted approximately one to five hours. The Veteran was not examined during a flare up, and the examiner noted that all musculoskeletal disorders present in an individual could potentially cause functional limitations during repetitive use over time, and pain, weakness, fatigability, or incoordination could significantly limit functional ability during a flare up. Accordingly, it would be mere speculation to provide data of functional loss related to a flare up because the examiner could not objectively compare the Veteran’s baseline to flare up limitations. Neurological testing reflected decreased muscle strength of 4/5 with forward flexion and extension, but no evidence of muscle atrophy. There was no evidence of ankylosis, subluxation, or instability.
The Veteran was afforded a VA examination to evaluate the severity of his right knee disability in February 2016. He reported experiencing flare ups of pain during cold weather. Physical examination reflected flexion to 110 degrees, and extension to 0 degrees. Pain noted during examination did not did not cause functional loss. There was no additional functional loss after repetitive use testing. The examination was not conducted during a flare-up and the examiner noted that the presence of pain, weakness, fatigability, or incoordination could limit functional ability during a flare-up, but to describe a functional limitation in terms of severity or terms such as significant or non-significant based on a possible future event would be mere speculation. Neurological testing reflected decreased muscle strength of 4/5 with forward flexion and extension, but no evidence of muscle atrophy. There was no evidence of ankylosis, subluxation, or instability.
September 2013 and September 2014 VA treatment records noted the musculoskeletal system had range of motion intact. However, for the reasons discussed below, considering the Veteran’s reports of increased pain and swelling during flare-ups, the Board finds that an increased rating of 30 percent, but no greater, based on limitation of extension is warranted.
The Veteran is currently in receipt of a 20 percent disability rating based on limitation of extension under Diagnostic Code 5261. A 20 percent disability rating is assigned when extension of the knee is limited to 15 degrees. To warrant an increased, 30 percent, disability rating, extension of the knee must be limited to 20 degrees. The January 2015 examination report noted the right knee disability manifested as extension limited to 15 degrees, and repetitive use testing could not be performed due to severe pain. Although the right knee demonstrated full flexion in February 2016, the Veteran reported pain, swelling, and flare-ups during cold weather. Both the January 2015 and February 2016 VA examinations noted the Veteran had reduced muscle strength with forward flexion and extension of the right knee. As such, the Board finds that, considering the impact of pain, flare-ups, and weakness, the right knee limitation of extension more nearly approximates the criteria for an increased, 30 percent, disability rating for limitation of extension to 20 degrees. 38 C.F.R. §§ 4.40, 4.45; DeLuca v. Brown, 8 Vet. App. 202 (1995); Mitchell v. Shinseki, 25 Vet. App. 32, 38 (2011); Sharp v. Shulkin, 29 Vet. App. 26 (2017).
The Board has considered whether the Veteran would be entitled to a separate compensable rating for the right knee disability under another Diagnostic Code. VA’s General Counsel has also stated that separate ratings under Diagnostic Code 5260 (limitation of flexion of the leg) and Diagnostic Code 5261 (limitation of extension of the leg) may be assigned for disability of the same joint. See VAOPGCPREC 9-04 (September 17, 2004), published at 69 Fed. Reg. 59,990 (2004). To warrant a compensable rating under Diagnostic Code 5260 applying to limitation of flexion, the right knee disability would have to demonstrate flexion limited to 45 degrees. At no point during the period on appeal did the right knee have flexion limited to 45 degrees. The January 2015 and February 2016 VA examination reports noted flexion limited to 110 degrees. The Normal range of flexion for the knee is 140 degrees. The Board cannot find the minor reduction of flexion of the right knee, even considering pain and weakness, approximates to limitation of flexion to 45 degrees. As the right knee flexion has consistently been limited to 110 degrees for the entire period on appeal, a separate compensable rating under Diagnostic Code 5260 is not warranted.
The Veteran is not entitled to separate compensable ratings under Diagnostic Codes 5258 or 5259, applying to dislocation and removal of the semilunar cartilage respectively, as there is no evidence the Veteran has a meniscus disability. Diagnostic Code 5257 is not applicable because all ligamentous testing conducted during the January 2015 and February 2016 VA examinations did not reveal any recurrent subluxation or lateral instability. Finally, Diagnostic Code 5256 is not applicable because there is no evidence of ankylosis.
In summary, resolving reasonable doubt in the Veteran’s favor and considering the functional impact of knee symptoms such as pain during flare-ups, an increased rating of 30 percent for service-connected right well healed old fracture with posttraumatic degenerative joint disease of the right knee is warranted. See 38 C.F.R. §§ 4.3, 4.7.
Entitlement to an increased rating greater than 10 percent for service-connected left patellofemoral syndrome
The Veteran contends that the constant pain and swelling caused by his service-connected left knee disability warrants an increased rating greater than 10 percent. The Veteran’s service-connected left patellofemoral syndrome is rated as 10 percent disabling under Diagnostic Code 5003, applying to arthritis.
The Veteran was afforded a VA examination in January 2015 to evaluate the severity of his left knee disability. He reported experiencing constant pain and recurrent swelling. He denied locking or giving way. The Veteran reported experiencing flare ups that impacted his ability to stand for more than 10 minutes. Physical examination reflected flexion to 120 degrees and extension to 10 degrees. The Veteran experienced pain with flexion, which the examiner noted caused functional loss. He was unable to squat or kneel. Repetitive use testing was not performed due to reported severe pain. The examiner noted the Veteran’s flare ups occurred four to five days a week, were severe, and lasted approximately one to five hours. The Veteran was not examined during a flare up, and the examiner noted that all musculoskeletal disorders present in an individual could potentially cause functional limitations during repetitive use over time, and pain, weakness, fatigability, or incoordination could significantly limit functional ability during a flare up. Accordingly, it would be mere speculation to provide data of functional loss related to a flare up because the examiner could not objectively compare the Veteran’s baseline to flare up limitations. Muscle strength testing reflected no reduced muscle strength or muscle atrophy. There was no evidence of ankylosis, subluxation, or instability.
The Veteran was afforded a VA examination to evaluate the severity of his left knee disability in February 2016. He reported experiencing pain during prolonged ambulation and standing, with occasional swelling. He also reported experiencing flare ups of pain during cold weather. Physical examination reflected flexion 125 degrees, and extension 0 degrees. Pain noted during examination did not cause functional loss. There was no additional functional loss after repetitive use testing. The examination was not conducted during a flare up and the examiner noted that the presence of pain, weakness, fatigability, or incoordination could limit functional ability during a flare up, but to describe a functional limitation in terms of severity or terms such as significant or non-significant based on a possible future event would be mere speculation. Muscle strength testing revealed no reduced muscle strength or muscle atrophy. There was no evidence of ankylosis, subluxation or instability.
September 2013 and September 2014 VA treatment records noted the musculoskeletal system had range of motion intact. However, for the reasons discussed below, considering the Veteran’s reports of increased pain and swelling during flare-ups, the Board finds that an increased rating of 20 percent, but no greater, based on limitation of extension is warranted.
Initially, the Board notes that while VA assigned Diagnostic Codes 5257-5003 to this disability, that is an incorrect application. Diagnostic Code 5257 applies to recurrent subluxation and instability, while Diagnostic Code 5003 grants a 10 percent rating for arthritis with pain, but without compensable limitation of motion. The medical findings, lay evidence, and adjudicative findings by VA when rating the knee disability show evidence of knee pain and limitation of motion, and specifically show negative findings or complaints for instability or subluxation. As Diagnostic Code 5257 rates on criteria based on knee impairment of instability or subluxation, criteria distinct from rating based on limitation of motion due to pain, it cannot be combined with Diagnostic Code 5003. Moreover, it is clear from the rating decisions that the Veteran is actually being compensated for limitation of extension under Diagnostic Code 5261, which rates based on limitation of motion, including due to pain and flare-ups.
The Veteran is currently in receipt of a 10 percent disability rating based on limitation of extension under Diagnostic Code 5261. A 10 percent disability rating is assigned when extension of the knee is limited to 10 degrees. To warrant an increased, 20 percent, disability rating, extension of the knee must be limited to 15 degrees. The January 2015 examination report noted the left knee disability manifested as extension limited to 10 degrees, and repetitive use testing could not be performed due to severe pain. Although the left knee demonstrated full flexion in February 2016, the Veteran reported pain, swelling, and flare-ups during cold weather. As such, the Board finds that, considering the impact of pain and flare-ups, the Veteran’s left knee limitation of extension more nearly approximates the criteria for an increased, 20 percent, disability rating for limitation of extension to 15 degrees. 38 C.F.R. §§ 4.40, 4.45; DeLuca v. Brown, 8 Vet. App. 202 (1995); Mitchell v. Shinseki, 25 Vet. App. 32, 38 (2011); Sharp v. Shulkin, 29 Vet. App. 26 (2017).
The Board has considered whether the Veteran would be entitled to a separate compensable rating for the right knee disability under another Diagnostic Code. VA’s General Counsel has also stated that separate ratings under Diagnostic Code 5260 (limitation of flexion of the leg) and Diagnostic Code 5261 (limitation of extension of the leg) may be assigned for disability of the same joint. See VAOPGCPREC 9-04 (September 17, 2004), published at 69 Fed. Reg. 59,990 (2004). To warrant a compensable rating under Diagnostic Code 5260 applying to limitation of flexion, the left knee disability would have to demonstrate flexion limited to 45 degrees. At no point during the period on appeal did the right knee have flexion limited to 45 degrees. The January 2015 VA examination report noted flexion limited to 120 degrees. The flexion was limited to 125 degrees during the February 2016 VA examination. The Normal range of flexion for the knee is 140 degrees. The Board cannot find the minor reduction of flexion of the left knee, even considering pain and weakness, approximates to limitation of flexion to 45 degrees. As the left knee flexion has been limited to, at most, 120 degrees for the entire period on appeal, a separate compensable rating under Diagnostic Code 5260 is not warranted.
The Veteran is not entitled to separate compensable ratings under Diagnostic Codes 5258 or 5259, applying to dislocation and removal of the semilunar cartilage respectively, as there is no evidence the Veteran has a meniscus disability. Diagnostic Code 5257 is not applicable because all ligamentous testing conducted during the January 2015 and February 2016 VA examinations did not reveal any recurrent subluxation or lateral instability. Finally, Diagnostic Code 5256 is not applicable because there is no evidence of ankylosis.
In summary, resolving reasonable doubt in the Veteran’s favor and considering the functional impact of knee pain including during flare-ups, entitlement to an increased rating of 20 percent for service-connected left patellofemoral syndrome is warranted. See 38 C.F.R. §§ 4.3, 4.7.
Entitlement to an increased rating greater than 50 percent for service-connected anxiety disorder, NOS
The Veteran asserts that his service-connected anxiety disorder is more severe than is warranted by a 50 percent disability rating. Specifically, he has consistently reported during his mental health evaluations that he self-isolates at home due to fear that something bad will happen, irritability, bad humor, heart palpations, chest tightness, and sleep disturbances.
The Veteran was afforded a VA examination in January 2015 to evaluate the severity of his anxiety disorder. He reported he lived with his wife and youngest son, and maintained good marital and personal relationships. During the examination, the Veteran reported episodes of unspecified fears, anxiety, sadness, panic-like episodes, and mild to moderate sleep impairment. Mental status examination reflected a mildly anxious mood with appropriate affect, mild memory impairment, and superficial insight and judgment, but otherwise there were no significant observations. The examiner noted symptoms of depressed mood, anxiety, panic attacks weekly or less often, chronic sleep impairment, mild memory loss, disturbances in motivation or mood, and difficulty adapting to stressful circumstanced including a work or worklike setting. The examiner noted the Veteran’s anxiety disorder manifested as occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily with normal routine behavior, self-care, and conversation.
The Veteran was afforded a second VA examination to evaluate the severity of his anxiety disorder in February 2016. He reported his relationships with his wife and children were good. The examiner noted symptoms of depressed mood, anxiety, chronic sleep impairment, flattened affect, and disturbances of motivation or mood. Mental status examination reflected depressed mood with congruent affect, but the evaluation was otherwise normal. The examiner indicated the Veteran’s anxiety disorder manifested as occupational and social impairment due to mild or transient symptoms which decreased his work efficiency and ability to perform occupational tasks only during periods of significant stress.
VA treatment records reflect the Veteran seeks ongoing mental health treatment for his anxiety disorder. He consistently reported poor motivation, irritability, bad humor, sadness, fear of losing control, fear of high crime rates, worry about political issues, anxiety, heart palpations, chest tightness, and sleep disturbances. He also consistently reported that he was unable to work due to low tolerance for noise and stress, and he preferred being at home where it was safer. Mental status examinations conducted over the years reflected he maintained good grooming and hygiene, and good eye contact. He was cooperative, but anxious. At no point did the Veteran ever demonstrate psychomotor retardation or agitation, suicidal or homicidal ideation, hallucinations, or delusions. His speech was always spontaneous and adequate with good rate and rhythm. His mood was frequently anxious with appropriate affect, and his thoughts were goal directed and relevant without racing thoughts or ideas of reference. His insight and judgement were noted to be fair. None of the VA mental health records noted memory impairment panic symptoms except for a November 2016 record, during which the Veteran reported chest pain and palpitations, and his memory was noted to be impaired.
To warrant a 70 percent rating, the service connected anxiety disorder would have to manifest as occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); and inability to establish and maintain effective relationships.
The Veteran consistently reported to his health care providers that he feared something bad would happen, and preferred to stay at home where he felt safe. He also endorsed symptoms of chest pain, heart palpitations, low tolerance to people and noise, and irritability.
The Board finds the Veteran’s service-connected anxiety disorder more closely approximates the occupational and social impairment with reduced reliability and productivity criteria for a 50 percent rating. The Veteran’s affect was noted to be flattened or anxious, he experienced mild memory impairment, panic attacks less than once a week, disturbances of motivation or mood, and superficial judgment and insight. At no point was there occupational or social impairment in most areas. The Veteran maintained good familial relationships and always reported he had good spousal support.
The Board notes that the Veteran frequently endorsed feelings of irritability, and reported that he quit his job as a school teacher because he was afraid he would lose control with a student. However, there is no evidence in the record that the Veteran experienced unprovoked irritability with periods of violence. He was able to maintain his familial relationships and only reported vague fears that he would lose control, but there is no evidence that he experienced any violent outbursts. Additionally, the Board notes that the January 2015 examiner observed that the Veteran experienced difficulty in adapting to stressful circumstances including a work or worklike setting, which is a symptom listed under the criteria for a 70 percent rating. A single symptom listed under the 70 percent criteria, without more, does not indicate that his symptoms cause occupational and social impairment with deficiencies in most areas to warrant a 70 percent rating. The Veteran’s symptoms, noted over the course of several years, more closely approximate to the 50 percent rating social and occupational impairment reduced reliability and productivity criteria, and do not cause occupational and social impairment with deficiencies in most areas.
The Board has considered the Veteran’s lay statements that he fears something bad will happen and prefers to stay in his home where he feels safer, and that he experiences panic-like symptoms such as chest pain and heart palpitations. However, there is no evidence he has occupational and social impairment with deficiencies in most areas due to near-continuous panic that interferes with the ability to function independently, appropriately, and effectively. As noted above, he maintained good relationships with his wife and children, and both the January 2015 and February 2016 VA examiners noted he was functioning well. For these reasons, an increased rating greater than 50 percent for service-connected anxiety disorder is not warranted. 
A TDIU is granted.
The Veteran contends that his anxiety disorder, right knee well healed old fracture with posttraumatic degenerative joint disease, and left patellofemoral syndrome make him unable to obtain and maintain substantially gainful employment. Specifically, he asserts that he retired early due to his anxiety.
At the time of his appeal, the Veteran was service-connected for anxiety disorder, NOS (rated as 50 percent disabling), right patellar well healed old fracture with posttraumatic degenerative joint disease of the right knee (rated as 30 percent disabling), left patellofemoral syndrome (rated as 20 percent disabling), left ear hearing loss (rated as 0 percent disabling), hemorrhoids (rated as 0 percent disabling), and a right thumb scar (rated as 0 percent disabling), for a combined 70 percent disability rating. As the Veteran has a single disability rated at 50 percent and sufficient additional disability to bring the combined rating to 70 percent, the Veteran has met the criteria for a TDIU for the entire period on appeal. 38 C.F.R. § 4.16(a) (2017).
After a full review of the record, the Board finds that a combination of the Veteran’s service-connected disabilities make him unable to secure or maintain substantially gainful employment.
The Veteran reported on his December 2014 Application for Increased Compensation Based on Unemployability that he completed four years of college and was employed by the Department of Education from 1989 through 2014. He reported that he could not work with students due to his condition. A completed Request for Employment Information in Connection with Claim for Disability Benefits reflected the Veteran retired early due to his condition and was not provided with any accommodations at work. He last worked in May 2014.
A review of the Veteran’s mental health treatment records from 2009, prior to his retirement in 2013, through the present, reflects the Veteran has consistently reported that his anxiety caused difficulty with communication at work and often had poor tolerance. In August 2013, he reported that sleep disturbance caused by his anxiety made it difficult for him to perform daily life activities, including work.
VA treatment records reflect the Veteran consistently reported he believed he was unable to work. He reported fearing that he would “lose control” while working with a student and that he had difficulties coping with his daily responsibilities. The January 2015 VA examiner noted the Veteran’s mood instability could limit his capacity to interact effectively and on a sustained basis with other individuals. His social functioning in a work environment that involved interaction with the public, responding appropriately to persons in authority, or cooperative behaviors involving coworkers could also be limited. During his February 2016 VA examination, the Veteran reported that he retired in 2013 and had to quit work due to work-related stress. The February 2016 VA examiner noted that the Veteran had a bachelor’s degree and worked for 24 years as a public-school history teacher, retiring in 2013. The examiner opined that the Veteran’s anxiety disorder symptoms were not so severe as to preclude him from obtaining and maintaining gainful employment.
During the January 2015 VA examination, he reported constant pain in both knees and declined to participate in repetitive use testing due to severe pain. The examiner noted the Veteran had antalgic ambulation favoring the right leg, and he used his arms to stand from a chair. There was mild reduction in muscle strength noted in the Veteran’s right knee. The examiner opined that the Veteran’s right and left knee disabilities did not preclude him from engaging in sedentary full-time employment, and he could perform clerical functions. During his February 2016 VA examination, the Veteran reported that he could not walk long distances and climbing stairs was difficult due to pain. The examiner noted he was precluded from heavy lifting, carrying, pushing, pulling, and handling. He also was precluded from activities requiring prolonged standing or ambulation.
The Veteran additionally experiences occupational impairment from his left ear hearing loss. The February 2016 examiner opined that the Veteran’s current degree of hearing loss, which affected the higher frequencies, would be expected to cause difficulty with conversing on the phone, limit understanding of conversation if the speaker were far away, limit participation in meeting settings. Speaking to the public at a close distant would not present a problem, and the Veteran had no problems following conversations in a quiet setting with the speaker up close.
After a full review of the record, the Board finds that the Veteran’s combined disabilities make him unable to obtain and maintain substantial gainful employment. Both the January 2015 and February 2016 VA examiners noted that the Veteran’s right and left knee disabilities prevent him from standing and ambulating for long periods of time. The February 2016 examiner opined that the Veteran was precluded from work that required heavy lifting, carrying, pushing, pulling, and handling. As such, the Veteran’s right and left knee disabilities preclude physical labor.
Although the January 2015 VA examiner noted that the Veteran’s right and left knee disabilities did not preclude him from performing clerical tasks, that opinion did not account for the Veteran’s anxiety disorder. The February 2016 VA examiner evaluating the Veteran’s anxiety disorder opined that his anxiety disorder symptoms were not so severe as to preclude him from obtaining and maintaining gainful employment. However, the January 2015 examiner evaluating the Veteran’s mood instability could limit his capacity to interact effectively and on a sustained basis with other individuals. His social functioning in a work environment that involved interaction with the public, responding appropriately to persons in authority, or cooperative behaviors involving coworkers could also be limited. Moreover, the Veteran has consistently reported irritability, bad humor, and low tolerance of noise and people. He has also endorsed feelings of fear and reported that he stays at home where it is safer, as he is constantly afraid something bad will happen. The January 2015 and February 2016 VA examiners do not appear to have considered the Veteran’s reports of self-isolation due to fear in their opinions. As for his ability to complete clerical tasks, the RO contacted the Veteran in December 2014 to inquire about improperly completed forms. The Veteran reported that he struggled to properly complete the forms due to his anxiety, providing evidence that his anxiety does prevent him from performing clerical work, as he could not independently fill out his claims forms. Moreover, his left ear hearing loss limited his ability to talk on the phone, hear people at a distance, and impaired his comprehension when there was background noise present.
(Continued on the next page)
 
The Board finds that the combination of the Veteran’s service-connected physical and mental health disabilities renders him unable to obtain or maintain substantial gainful employment.
 
J. PARKER
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD A. Parsons, Associate Counsel